**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| GEORGE D. ARNESEN, *et al.,* | |
| *Plaintiffs,* | |
| *v.* | |
| GINA RAIMONDO, *et al.,* | No. 1:23-cv-00145-TBM-RPM |
| *Defendants.* | |
| KAREN BELL, *et al.,* | |
| *Plaintiffs,* | |
| *v.* | |
| GINA RAIMONDO, *et al.,* | |
| *Defendants.* | |

**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF CROSS-
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' MOTION IN THE ALTERNATIVE FOR SUMMARY
JUDGMENT**

## TABLE OF CONTENTS

Page(s)

I.   BACKGROUND ..................................................................................................... 2

  A.  Magnuson-Stevens Act ...................................................................................... 2

  B.  Amendment 54 .................................................................................................... 4

II.   STANDARD OF REVIEW ..................................................................................... 5

III.   ARGUMENT .......................................................................................................... 6

  A.  Plaintiffs Lack Standing...................................................................................... 6

    1.  Plaintiffs Lack Standing for their Claims Challenging the Gulf of Mexico Fishery Management Council .......................................................................................... 7

    2.  Plaintiffs Lack Standing to challenge DAARP Rauch's actions with respect to the Amendment 54 Final Rule ................................................................................ 14

  B.  The Council, individual Council members, and designees are improper defendant…………………………………………………………………………18

  C.  There is no Appointments Clause Infirmity in the Council or DAARP Rauch..... 20

    1.   Council Members are not "officers of the United States"............................... 20

      a.   Council Members do not occupy a "continuing" position......................... 21

      b.   Council Members do not wield "significant authority"............................. 23

    2.   DAARP Rauch did not "issue" the Amendment 54 Final Rule ................... 32

IV.   CONCLUSION ...................................................................................................... 34

## <u>TABLE OF AUTHORITIES</u>

**Case**          **Page(s)**

*Alaska Factory Trawler Ass'n v. Baldrige*,
831 F.2d 1456 (9th Cir. 1987) ....................................................................... 14

*Alfa Int'l Seafood v. Ross*,
No. 17-31, 2017 WL 3738397 (D.D.C. June 22, 2016) ................................. 35

*All. Against IFQs v. Brown*,
84 F.3d 343 (9th Cir. 1996) ........................................................................... 26

*Anglers Conservation Network v. Pritzker*,
70 F. Supp. 3d 427 (D.D.C. 2014) ................................................................ 14

*Associated Fisheries of Maine v. Evans*,
350 F. Supp. 2d 247 (D. Me. 2004) ............................................................... 25

*Atchafalaya Basinkeeper v. Bostick*,
No. 14-649, 2015 WL 3824318 (E.D. La. June 19, 2015) .............................. 6

*Axon Enter. v. Fed. Trade Comm'n*,
143 S. Ct. 890 (2023) ...................................................................................... 8

*Ayotte v. Planned Parenthood of N. New Engl.*,
546 U.S. 320 (2006) ....................................................................................... 35

*Buckley v. Valeo*,
424 U.S. 1 (1976) ........................................................................................... 28

*C&W Fish Co. v. Fox*,
931 F.2d 1556 (D.C. Cir. 1991) ...................................................................... 3

*Carlson v. Green*,
446 U.S. 14 (1980) ......................................................................................... 20

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398, (2013) ................................................................................. 7, 12

*Coastal Conservation Ass'n v. Locke*,
Nos. 2:09-cv-641-FtM-29SPC, 2:10-cv-95-Ftm-29SPC, 2011 WL 4530631 (M.D. Fla.
Aug. 16, 2011) ................................................................................................ 19

*Coastal Conservation Ass'n v. U.S. Dep't of Com.*,
*No. 15-130*0, 2016 WL 549*11* (E.D. La. Jan. 5, 2016) ................................... 6

*Collins v. Yellen,*
  141 S. Ct. 1761 (2021) ........................................................................................... 10, 11

*Comm. for Monetary Reform v. Bd. of Governors,*
  766 F.2d 538 (D.C. Cir. 1985) ....................................................................................... 9

*Conservation Law Found. v. Franklin,*
  989 F.2d 54 (1st Cir. 1993) .......................................................................................... 14

*Conservation Law Found. v. Mineta,*
  131 F. Supp. 2d 19 (D.D.C. 2001) ............................................................................... 27

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) ....................................................................................................... 7

*Delta Com. Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council,*
  364 F.3d 269 (5th Cir. 2004).......................................................................................... 3

*Dep't of Com. v. New York,*
  139 S. Ct. 2551 (2019) ................................................................................................. 12

*Dep't of Educ. v. Brown,*
  143 S. Ct. 2343 (2023) ................................................................................................. 10

*Estes v. U.S. Dep't of the Treasury,*
  219 F. Supp. 3d 17 (D.D.C. 2016) ............................................................................... 26

*Federal Election Commission ("FEC") v. Cruz,*
  142 S. Ct. 1638 (2022) ................................................................................................. 13

*Fishing Co. of Alaska v. Gutierrez,*
  510 F.3d 328 (D.C. Cir. 2007) ..................................................................................... 30

*Flaherty v. Ross,*
  373 F. Supp. 3d 97 (D.D.C. 2019) ........................................................................ *passim*

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
  561 U.S. 477 (2010) ..................................................................................................... 35

*Freytag v. Comm'r of Internal Revenue,*
  501 U.S. 868 (1991) ........................................................................................... 18, 23, 31

*Gen. Category Scallop Fishermen v. Sec'y, U.S. Dep't of Com.,*
  635 F.3d 106 (3rd Cir. 2011).......................................................................................... 19

*Goethel v. Pritzker,*
No. 15-CV-497-JL, 2016 WL 4076831 (D.N.H. July 29, 2016) ................................. 30

*Guedes v. ATF,*
920 F.3d 1 (D.C. Cir. 2019) ........................................................................................ 35

*Gulf Restoration Network v. Nat'l Marine Fisheries Serv.,*
730 F. Supp. 2d 157 (D.D.C. 2010) ...................................................................... 13, 14

*In re DBC,*
545 F.3d 1373 (Fed. Cir. 2008) .................................................................................. 34

*J.H. Miles & Co. v. Brown,*
910 F. Supp. 1138 (E.D. Va. 1995) .................................................................. 8, 19, 30

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994) ...................................................................................................... 6

*Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States,*
259 F. Supp. 2d 783 (W.D. Wis. 2003) ....................................................................... 32

*Louisiana v. Baldridge,*
538 F. Supp. 625 (E.D. La. 1982) ............................................................................... 15

*Lucia v. Sec. & Exch. Comm'n,*
138 S. Ct. 2044 (2018) ........................................................................................ *passim*

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ................................................................................................ 7, 15

*Magnuson Act,*
2018 WL 6839393 (Dec. 31, 2018) ............................................................................. 29

*Massachusetts v. Pritzker,*
10 F. Supp. 3d 208 (D. Mass. 2014) ........................................................................... 17

*Medina Cnty. Env't. Action Ass'n,*
602 F.3d (5th Cir. 2010) .............................................................................................. 16

*Melcher v. Fed. Open Mkt. Comm,*
644 F. Supp. 510 (D.D.C. 1986) ................................................................................. 23

*Michaelson v. U.S. ex rel. Chi., St. Paul, Minneapolis & Omaha Ry. Co.,*
266 U.S. 42 (1924) ...................................................................................................... 29

*N.C. Fisheries Ass'n v. Gutierrez,*
   550 F.3d 16 (D.C. Cir. 2008) ............................................................. 3

*National Horseman's Benevolent & Protective Association v. Black,*
   53 F.4th 869 (5th Cir. 2022)............................................................. 28

*Nat'l Wildlife Fed'n v. EPA,*
   286 F.3d 554 (D.C. Cir. 2002) ......................................................... 34

*Northwest Environmental Defense Center v. Brennen,*
   958 F.2d 930 (9th Cir. 1992)............................................................. 9

*Nw. Env't. Def. Ctr. v. Evans,*
   No. CIV. 87-229-FR, 1988 WL 360476 (D. Or. Aug. 12, 1988)................................ 30

*Oklahoma v. United States,*
   62 F.4th 221 (6th Cir. 2023)......................................................... 28, 29

*Papasan v. Allain,*
   478 U.S. 265 (1986) ...................................................................... 15

*Rasul v. Bush,*
   542 U.S. 466 (2004) ....................................................................... 6

*Renne v. Geary,*
   501 U.S. 312 (1991) ....................................................................... 6

*Riley v. St. Luke's Episcopal Hosp.,*
   252 F.3d 749 (5th Cir. 2001).......................................................... 23, 24

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
   140 S. Ct. 2183 (2020) ............................................................ *passim*

*Seminole Tribe of Fla. v. Florida,*
   517 U.S. 44 (1996) ....................................................................... 20

*Trawler Diane Marie, Inc. v. Brown,*
   918 F. Supp. 921 (E.D.N.C. 1995) ....................................................... 14

*Trawler Diane Marie, Inc. v. Kantor,*
   91 F.3d 134 (4th Cir. 1996).............................................................. 15

*United States v. Arthrex, Inc.,*
   141 S. Ct. 1970 (2021) .............................................................. 21, 35

*United Cook Inlet Drift Association v. NationalMarine Fisheries Serv.*,
  *3:21-cv-00255-JMK,* 2022 WL 2222879 (D. Alaska June 21, 2022) ................ 9, 10, 11

*United States v. Germaine,*
  99 U.S. 508 (1878) ................................................................................. 23

*Webster v. Doe*,
  486 U.S. 592 (1988) ................................................................................ 20

*Yakutat, Inc. v. Evans,*
  No. C02-1052R, 2003 WL 1906336 (W.D. Wash. Apr. 10, 2003) ............................ 30

*Yakutat, Inc. v. Gutierrez,*
  407 F.3d 1054 (9th Cir. 2005) ................................................................... 30

**Statutes**

5 U.S.C. § 551 ............................................................................................ 4

5 U.S.C. § 704 ............................................................................................ 6

5 U.S.C. § 706(2)(A)-(D) ............................................................................... 6

5 U.S.C. § 706(2)(B) ................................................................................ 6, 20

16 U.S.C. § 1801 ......................................................................................... 3

16 U.S.C. § 1802(33) ............................................................................... 26, 27

16 U.S.C. § 1851(a)(1) ............................................................................. 25, 27

16 U.S.C. § 1851(a)(4) ................................................................................. 26

16 U.S.C. § 1851(a)(8) ................................................................................. 26

16 U.S.C. § 1851(a)(10) ............................................................................... 26

16 U.S.C. § 1852(a) ..................................................................................... 3

16 U.S.C. § 1852(a)(1)(E) ........................................................................ 4, 22, 23

16 U.S.C. § 1852(b) ................................................................................... 3, 4

16 U.S.C. § 1852(b)(1) ............................................................................. 22, 27

16 U.S.C. § 1852(b)(1)(B) ............................................................................. 27

16 U.S.C. § 1852(b)(2) ............................................................................... 4, 24

16 U.S.C. § 1852(b)(2)(B) ...................................................................... 21, 22

16 U.S.C. § 1852(b)(3) ...................................................................................... 24

16 U.S.C. § 1852(d) ............................................................................................ 23

16 U.S.C. § 1852(e)(3) ...................................................................................... 22

16 U.S.C. § 1852(h)(1) ........................................................................... 4, 13, 24

16 U.S.C. § 1853(c) .................................................................................... 4, 24

16 U.S.C. § 1854 .................................................................................................. 4

16 U.S.C. § 1854-55 ............................................................................................ 5

16 U.S.C. § 1854(a)-(b) ............................................................................ 13, 24

16 U.S.C. § 1854(a)(1)(A) .................................................................... 25, 26, 27

16 U.S.C. § 1854(a)(3) ........................................................................ 12, 24, 25

16 U.S.C. § 1854(b) ..................................................................................... 4, 11

16 U.S.C. § 1854(b)(3) ............................................................................ 5, 24, 31

16 U.S.C. § 1854(c) ..................................................................... 14, 24, 25, 32

16 U.S.C. § 1854(h) ..................................................................................... 4, 11

16 U.S.C. § 1855(c) ........................................................................................... 14

16 U.S.C. § 1855(c)(1) ..................................................................................... 24

16 U.S.C. § 1855(c)(3)(B) ................................................................................ 24

16 U.S.C. § 1855(c)(3)(C) ................................................................................ 25

16 U.S.C. § 1855(c)-(d) .................................................................................... 24

16 U.S.C. § 1855(d) .......................................................................................... 14

16 U.S.C. § 1855(f)(1)-(2) ........................................................................ 20, 25

**Regulations**

50 C.F.R. § 600.305 ........................................................................................... 27

**Federal Register**

88 Fed. Reg. 14,964 (Mar. 10, 2023) .................................................................. 5

88 Fed. Reg. 39,193 (June 15, 2023) .................................................................. 5

**Other Authorities**

1996 Sustainable Fisheries Act,1996 U.S.C.C.A.N. 4120, 1996 WL 787969 ................ 29

2006 Magnuson-Stevens Reauthorization Act, 2007 U.S.C.C.A.N. S83, 2007 WL 892712 ........................................................................................... 29

The Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson Act") vests the Secretary of the United States Department of Commerce, through the National Marine Fisheries Service ("Fisheries Service"), with the power to review, assess, and ultimately promulgate final rules that give legal effect to recommendations by advisory regional fisheries councils on complex fishery matters. The Fisheries Service thus reviewed, assessed, and duly promulgated the Final Rule challenged here implementing Amendment 54 to the Reef Fish Fishery Management Plan ("Final Rule"), which sets catch limits to rebuild greater amberjack stock ("amberjack") in the Gulf of Mexico. Plaintiffs, two commercial fishers who hold federal permits that allow them to fish for amberjack, now challenge the Final Rule under the erroneous legal theory that it is the product of the Gulf of Mexico Fisheries Council ("Council" or "Gulf Council") and the Fisheries Service's Deputy Assistant Administrator for Regulatory Programs Sam Rauch ("DAARP Rauch"), who they allege serve in violation of the Appointments Clause.

Plaintiffs' claims fail at the outset because they lack standing, as the harm they allege is not traceable to the allegedly unconstitutional appointment or removal of the Council members or DAARP Rauch. Instead, their alleged injuries stem from the Final Rule, which was issued by the head of the Fisheries Service, Assistant Administrator for Fisheries Janet Coit ("AA Coit"), a duly appointed inferior officer whose authority to issue the Final Rule is uncontested. Because Plaintiffs' arguments miss the mark of which entity caused their injury by issuing the Final Rule, they cannot fulfill the causation and redressability prongs of the standing inquiry.

Even if Plaintiffs had standing, they fail on the merits of their Appointments Clause claims because they fundamentally misapprehend the Magnuson Act, which makes clear

that the Council's function is advisory. The Council is a panel of experts that provides advice to the Fisheries Service on the conservation and management of specific fisheries by developing fishery management plans and facilitates gathering information from the impacted public to better inform fishery related decisions. While the Council's function is to inform the Fisheries Service's decision to issue implementing regulations, none of the Council's actions carry legal effect without a corresponding review by the Fisheries Service. Council members are thus not "officers of the United States" and need not be appointed under the Appointments Clause. Plaintiffs' claim attacking DAARP Rauch's actions also fails because it rests on the flawed premise that he "exercises the core executive function of unilaterally *issuing* final binding regulations." ECF No. 1 ¶ 159 (emphasis added). In reality, AA Coit, whose authority is uncontested, issues regulations, while DAARP Rauch undertakes the ministerial task of signing material for publication in the Federal Register.

The Court should grant summary judgment in full for defendants.

## I.      BACKGROUND

### A.      Magnuson-Stevens Act

The Magnuson Act establishes a national program for conservation and management of fishery resources. 16 U.S.C. § 1801; *see also Delta Com. Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council*, 364 F.3d 269, 271 (5th Cir. 2004) (the Act "aims to preserve fishery resources by preventing overfishing"). The Fisheries Service, acting under authority delegated from the Secretary of Commerce, is responsible for managing fisheries under the Magnuson Act. Governance of fisheries is accomplished through fishery management plans ("FMPs"), amendments to those plans, and implementing regulations.

*See N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 17 (D.C. Cir. 2008).

To assist in fishery management, the Magnuson Act established regional fishery management councils, 16 U.S.C. § 1852(a), "composed of members who represent the interests of the states included in that region." *C&W Fish Co. v. Fox*, 931 F.2d 1556, 1557-58 (D.C. Cir. 1991). Voting members of the Councils include federal, state, and territorial fishery management officials, and individuals nominated by state governors and appointed by the Secretary who are knowledgeable regarding the conservation and management, or the commercial or recreational harvest, of fishery resources within the Councils' geographic areas. 16 U.S.C. § 1852(b). The Gulf Council can make recommendations regarding the management of fisheries in the Gulf of Mexico seaward of the States of Texas, Louisiana, Mississippi, Alabama, and Florida. *Id.* § 1852(a)(1)(E). The Magnuson Act also states that the "Gulf Council shall have 17 voting members, including 11 appointed by the Secretary in accordance with subsection (b)(2)." *Id.*

Congress directed the councils to prepare and submit to the Fisheries Service FMPs for any fishery that requires conservation and management, and FMP amendments "that are necessary from time to time (and promptly whenever changes in conservation and management measures in another fishery substantially affect the fishery for which such plan was developed)." *See id.* § 1852(h)(1). FMPs are not self-implementing. Along with developing FMPs and FMP amendments, a council also prepares proposed regulations for implementing an FMP or FMP amendment. *Id.* § 1853(c). The Secretary, through the Assistant Administrator for Fisheries ("AA"), who is the head of the Fisheries Service, then reviews the proposals and, if appropriate, promulgates regulations to implement an FMP or amendment recommended by a council. *Id.* § 1854.

The Fisheries Service reviews proposed regulations for consistency with the relevant FMP, the Magnuson Act, and any other applicable law, and pursuant to a process set forth in the Magnuson Act, publishes proposed rules, solicits public comment, and promulgates final rules. *Id.* § 1854(b). The Magnuson Act further provides that the Secretary may promulgate a final rule that revises proposed regulations, consistent with the Administrative Procedure Act ("APA) and after considering public comment, after consulting the Council about the revision and publishing an explanation of the revision in the Federal Register. *Id.* § 1854(b)(3). Councils cannot promulgate regulations and are not federal agencies for purposes of the APA. 5 U.S.C. § 551; *Flaherty v. Ross*, 373 F. Supp. 3d 97, 104-10 (D.D.C. 2019). Only once the Fisheries Service promulgates a final implementing regulation does the regulation have the force and effect of law. 16 U.S.C. §§ 1854-55.

## B.     Amendment 54

On April 7, 2021, the Fisheries Service informed the Gulf Council that the amberjack stock was overfished and continued to undergo overfishing, and that the stock could be rebuilt by the end of the established rebuilding time of 2027 by reducing harvest. 88 Fed. Reg. 39193, 39194 (June 15, 2023). At its October 2022 meeting, the Gulf Council approved Amendment 54 to the Reef Fish FMP, by a 16-1 vote, to end overfishing and work to meet the rebuilding timeline for amberjack. The Gulf Council submitted Amendment 54 to the Fisheries Service, and on March 2, 2023, a notice of availability was published in the Federal Register. 88 Fed. Reg. 13077. AA Coit, as head of the Fisheries Service, published in the Federal Register a proposed rule that would implement Amendment 54, 88 Fed. Reg. 14964 (Mar. 10, 2023), and, after considering public

4

comments on both Amendment 54 and the proposed rule, approved Amendment 54 and issued a final rule implementing its management measures, 88 Fed. Reg. at 39193. Among other things, the Final Rule modified the annual catch limits and catch target for commercial amberjack fishing in the Gulf of Mexico. *Id.*

Plaintiffs do not challenge the substance of the Final Rule. Instead, they contend that it is legally deficient because DAARP Rauch, who signed the rule for publication in the Federal Register, and the Council serve in violation of the Appointments Clause of the United States Constitution. ECF No. 1.

## II.    STANDARD OF REVIEW

As courts of limited jurisdiction, federal courts may decide cases only after the party asserting jurisdiction demonstrates that the dispute falls within the court's constitutional and statutory jurisdiction. *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (federal courts "possess only that power authorized by Constitution and statute" (Scalia, J., joined by Rehnquist, C.J., and Thomas, J., dissenting) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))). The presumption is that federal courts lack jurisdiction unless the record affirmatively establishes otherwise. *Renne v. Geary*, 501 U.S. 312, 316 (1991).

Defendants bring this Motion for Summary Judgment under Rule 56(c) of the Federal Rules of Civil Procedure. Because this case involves review of a final agency action under the APA, 5 U.S.C. § 704, however, the standard in Rule 56(c) does not apply due to the court's limited role of reviewing the administrative record. *See, e.g.*, *Atchafalaya Basinkeeper v. Bostick*, No. 14-649, 2015 WL 3824318, at *6 (E.D. La. June 19, 2015) (In the context of judicial review of an administrative agency's decision, a "motion for

summary judgment stands in a somewhat unusual light, in that the administrative record proves the complete factual predicate for the court's review." (citation omitted)). The Final Rule is subject to limited judicial review under the APA, 5 U.S.C. § 706(2)(A)-(D), and a reviewing court is to affirm final agency action unless that action is "contrary to constitutional right, power, privilege, or immunity." *Id.* § 706(2)(B); *Coastal Conservation Ass'n v. U.S. Dep't of Com.*, No. 15-1300, 2016 WL 54911, at *3 (E.D. La. Jan. 5, 2016), *aff'd*, 846 F.3d 99 (5th Cir. 2017).

### III.    ARGUMENT

**A.    Plaintiffs Lack Standing**

Plaintiffs lack standing to bring any of their three claims because they have not shown—and cannot show—that their claimed injuries are caused by alleged constitutional infirmities in the Council's structure or by DAARP Rauch's actions, or that their alleged injuries are redressable.

Article III of the United States Constitution confines the jurisdiction of the federal courts to actual "cases" and "controversies." U.S. Const. art. III, § 2. "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, (2013) (citations omitted). Plaintiffs bear the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992). The irreducible constitutional minimum of standing contains three elements. *Id.* at 560-61. First, the plaintiff must have suffered an "injury in fact," meaning an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id.* at 560. Second, there must be a causal connection between

the injury and the conduct complained of: the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* Third, it must be "likely," not merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 561. Plaintiffs "must demonstrate standing for each claim" they bring. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

### 1.   Plaintiffs Lack Standing for their Claims Challenging the Gulf of Mexico Fishery Management Council

Plaintiffs argue that they have suffered injuries in the form of financial losses due to the inability to fish amberjack, and that "subjection to" actions taken by "unconstitutionally appointed and insulated officers is an independently cognizable" harm. ECF No. 7 at 38 (quoting *Axon Enter. v. Fed. Trade Comm'n*, 143 S. Ct. 890, 903–04 (2023)). Even assuming that Plaintiffs have provided sufficient allegations to show they have suffered financial injury for the sake of the standing analysis, these injuries are not traceable to any constitutional infirmities in the makeup of the Council or to Amendment 54 itself. They are instead traceable only to the Final Rule issued by the Fisheries Service, which, as Plaintiffs admit, was the first "legal and binding" action imposed on Plaintiffs in the Amendment 54 process. *See, e.g.*, ECF No. 1 ¶ 24.[1] Plaintiffs supposed "independent" constitutional injury does not absolve them of the need to prove causation; even assuming

---

[1] Given that the Final Rule is the "binding" decision that has allegedly caused Plaintiffs' financial injuries, the conclusory statements in their declarations that Amendment 54 itself has caused them harm must be disregarded. *See, e.g.*, ECF No. 6-1 ¶¶ 28, 21; ECF No. 6-2 ¶¶ 18, 21. Put another way, if the Court were to vacate Amendment 54, nothing at all would change for Plaintiffs. Only the Final Rule causes Plaintiffs' alleged harm, but of course that is the Fisheries Service's action—not that of the Council or its members. Moreover, as explained in more detail below, these statements are simply incorrect as a legal matter because the Council has "no 'authority' to do anything[,]" and final decision-making power rests with the Fisheries Service. *See J.H. Miles & Co. v. Brown*, 910 F. Supp. 1138, 1157-59 (E.D. Va. 1995).

Plaintiffs' constitutional challenge to the Council's makeup has merit (it does not), Plaintiffs have not "sustain[ed]" an injury "from an [act by the Council] that allegedly exceeds the [Council's] authority." *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196 (2020) (internal quotation marks and citation omitted). Rather, they can only claim to have been injured by the Final Rule promulgated by the Fisheries Service.

Although the Fifth Circuit has not yet confronted this issue, other courts have rejected constitutional challenges like the one that Plaintiffs raise here because any alleged constitutional infirmities in the makeup of the Council are not fairly traceable to injuries allegedly caused by a rule issued by the Fisheries Service. For example, in *Northwest Environmental Defense Center v. Brennen*, 958 F.2d 930, 937 (9th Cir. 1992), the plaintiffs challenged regulations setting harvest limits for Oregon coastal coho salmon. In addition to challenging the merits of the agency's decision, the plaintiffs argued that the "composition of the Pacific Council violates the Appointments Clause and the principle of separation of powers." *Id.* (footnote omitted). The Ninth Circuit declined to reach the alleged constitutional infirmity question because the composition of the Pacific Council was not the cause of the plaintiffs' injury. *Id.* The court reasoned that the Secretary implemented those regulations after review. *Id.* Thus, "[w]hatever constitutional infirmity may inhere in the Council's structure has not caused the injury of which [plaintiff] complains," *id.*, and the plaintiffs did not have standing to bring their constitutional claims. *Id.* at 937-38 (citing, among others, *Comm. for Monetary Reform v. Bd. of Governors*, 766 F.2d 538 (D.C. Cir. 1985) (private individuals and businesses who allegedly suffered financial harm from the Federal Reserve System's policies lack standing to challenge constitutionality of composition of the Federal Open Market Committee)).

The District of Alaska recently followed this Ninth Circuit precedent in *United Cook Inlet Drift Association v. National Marine Fisheries Serv. ("UCIDA")*, No. 3:21-cv-00255-JMK, 2022 WL 2222879 (D. Alaska June 21, 2022), a case in which a group of commercial fishers asserted a constitutional challenge to the composition of the North Pacific Fishery Management Council ("North Pacific Council") through a purported challenge to the regulations implementing an FMP. The *UCIDA* court held that the alleged economic injuries described by the plaintiffs were caused by the final rule promulgated by the Fisheries Service, not by any action of the North Pacific Council. *Id.* at *18. Although the plaintiffs insisted that North Pacific Council recommendations are proposals in name only and that the North Pacific Council is de facto making policy decisions and implementing regulations, the *UCIDA* court held that "a Council's proposal has no legal effect whatsoever without the agency first promulgating implementing regulations." *Id.* (footnote omitted). Further, the *UCIDA* court held that "[t]he Secretary has wide discretion to deny a proposed FMP or plan amendment if it is inconsistent with the National Standards or other applicable laws." *Id.* Accordingly, the Secretary's obligation to determine whether regulations proposed by the North Pacific Council are consistent with the FMP, plan amendment, the Magnuson Act, and all other applicable laws before taking any rulemaking action "means that the promulgation of regulations ultimately lies within the discretion of the Secretary." *Id.*

Importantly, the *UCIDA* court held that *Brennen* had not been overruled by subsequent Supreme Court decisions, and explicitly addressed one of the cases on which Plaintiffs rely to attempt to show causation: *Collins v. Yellen*, 141 S. Ct. 1761 (2021); *UCIDA,* 2022 WL 2222879, at *19. The *UCIDA* court distinguished *Collins* on the grounds

that the North Pacific Council did not promulgate the final rule that inflicted the purported injury, stating that *Collins* "does not change the fact that Councils under the [Magnuson Act] are simply advisory bodies and have no legal authority." 2022 WL 2222879, at *19. The traceability requirement embedded within Article III demands more than incidental effects; the injury must be fairly traceable to the *challenged action. See Dep't of Educ. v. Brown*, 143 S. Ct. 2343, 2355 (2023) ("And to the extent that the Department's decision to adopt the Plan under the HEROES Act might have some incidental effect on the likelihood that the Department will undertake a separate loan-forgiveness program under a different statute, the relationship is not sufficiently close to persuade us that the latter is fairly traceable to the former."). The *UCIDA* court was correct, and this Court should adopt its reasoning. In *Collins*, the Court found that the shareholders' injuries were caused by "an executive act that allegedly exceed[ed] the official's authority." 141 S. Ct. at 1779 (quoting *Seila*, 140 S. Ct. at 2196). The shareholders challenged the Federal Housing Finance Agency's "adoption and implementation" of an action that was "responsible for the variable dividend formula that swept the companies' net worth to Treasury and left nothing for their private shareholders." *Id. Seila*, on which *Collins* relied, likewise held that if a plaintiff can show that they have been harmed by an official's action taken in excess of constitutional authority, causation is satisfied. 140 S. Ct. at 2196.

Here, no action by the Gulf Council has caused Plaintiffs any harm. As the *UCIDA* court explained, the Council's recommendation to adopt an amendment has no legal effect until it is accepted and promulgated into a regulation issued by the AA, as head of the Fisheries Service. 2022 WL 2222879, at *18. In other words, Plaintiffs lack standing not because they fail to show a "counterfactual world" in which a differently structured Council

would have reached a different decision, *Seila*, 140 S. Ct. at 2196, but because any proposal by the Council is only that—a proposal. In fact, there is no world in which the Council's action harms Plaintiffs' interests.

Plaintiffs' attempts to overcome the legal ineffectiveness of the Council's actions fail. Relying on 16 U.S.C. § 1854(a)(3), Plaintiffs argue that the Fisheries Service's action is not necessarily a prerequisite to Council recommendations taking effect. That Section provides that if the Secretary does not approve or disapprove of a Council amendment within 30 days, the amendment "shall take effect as if approved." *Id.* § 1854(a)(3). This provision does not imbue the Council's amendments with any legal force or authority, as they still lack legal effect without implementing regulations which the Secretary—not the Council—issues. *Id.* § 1854(b). But the Court need not even reach this issue, because § 1854(a)(3) does not come into play in this case. As explained above, the Secretary, through AA Coit as the head of the Fisheries Service, *did* approve Amendment 54. Thus, Plaintiffs have suffered no injury because of the Council's Amendment 54 "tak[ing] effect *as if approved." Id.* (emphasis added); *see Seila*, 140 S. Ct. at 2196 (showing that plaintiff was harmed "from an executive act that allegedly exceeds the official's authority" (citation omitted)).

Plaintiffs argue that because the Council's actions were the "legal and factual prerequisites to the Final Rule's catch limits," they can show "*de facto* causality." ECF No. 7 at 39 (citing *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019)). *Department of Commerce* is not on point—it dealt with whether plaintiffs had adequately established the "predictable effect of Government action on the decisions of third parties." 139 S. Ct. at 2566 (citations omitted). It did not disturb the Court's "steady refusal" to find standing

11

where the chain of causation is broken by "independent decisionmakers" exercising their judgment. *Id.*; *Clapper*, 568 U.S. at 413. That is the case here. The Secretary, through AA Coit, had the ultimate discretion to approve or disapprove of Amendment 54, after considering the National Standards and applicable law, among other factors. She chose to approve Amendment 54, and, importantly, to implement it through regulation. This independent, discretionary decision by the Secretary—and not the Council's proposal—is the proper focus for the cause of any injuries incurred by Plaintiffs.

Plaintiffs also mistakenly rely on *Federal Election Commission ("FEC") v. Cruz*, 142 S. Ct. 1638 (2022). There, the Court found that because an agency's power to promulgate regulations necessarily depends on authorization provided by statute, plaintiffs claiming to be harmed by a regulation could also challenge the authorizing statute. *Id.* at 1649–50. Again, this case is inapposite. The underlying statute in *FEC* is different from the Magnuson Act because, as explained, the Secretary is charged with enforcing the Magnuson Act, and any regulations are ultimately issued by the Secretary, whether or not the Council has proposed an FMP or FMP amendment. *See* 16 U.S.C. §§ 1852(h)(1), 1854(a)-(b).  Moreover, as the Court recognized in *FEC*, a litigant cannot, "by virtue of his standing to challenge one government action, challenge other governmental actions that did not injure him." 142 S. Ct. at 1650. Whereas in *FEC* the Court determined the appellees were challenging "*one* Government action that causes their harm[,]" Plaintiffs here seek to challenge an action that did not injure them—the Council's proposal of Amendment 54— via a claim to have been injured by the Fisheries Service's Final Rule implementing that Amendment. *See id.*  Courts have refused to recognize any cause of action to challenge the Council's recommendations because the recommendations have no effect and are not final

agency actions. *See, e.g., Gulf Restoration Network v. Nat'l Marine Fisheries Serv.*, 730 F. Supp. 2d 157, 174 (D.D.C. 2010). The Court should not permit Plaintiffs to challenge legally benign actions by the Council for which they lack standing.

There is a fundamental problem with Plaintiffs' case: it is built on the faulty premise that the Council caused their alleged injury of diminished fishing opportunity for amberjack. There is a legal disconnect here; Plaintiffs' claims are contradicted by the plain language of the statute and similar arguments have already been rejected by many courts. Once a council recommends a plan to the Fisheries Service, only the Secretary (acting through the Fisheries Service) has the authority to approve and implement it through promulgating regulations that have the effect of law. *See* 16 U.S.C. §§ 1855(d), 1854(c), 1852(h)(1), 1854(a)-(b), 1855(c). To be sure, the Council provides critical advice, but it is only advice. The proposal has no legal effect without implementing regulations. *Gulf Restoration Network*, 730 F. Supp. 2d at 174 (no cause of action to challenge a fishery management plan when the Secretary did not issue implementing regulations); *Conservation Law Found. v. Franklin*, 989 F.2d 54, 60 (1st Cir. 1993) (the Secretary "is ultimately charged with preventing overfishing as mandated by the" statute); *Anglers Conservation Network v. Pritzker*, 70 F. Supp. 3d 427, 436 (D.D.C. 2014) (vote of the Council has no legal effect and is thus not judicially reviewable), *aff'd*, 809 F.3d 664 (D.C. Cir. 2016); *Flaherty*, 373 F. Supp. 3d at 106-110 (lengthy analysis determining the Council is not an "agency" under the APA).

These issues with causation also crystalize Plaintiffs' failure to establish redressability. Courts have recognized that an otherwise valid regulation implemented by the Secretary will not be invalidated based on procedural irregularities at the Council level:

If the Secretary has followed the appropriate rulemaking procedures and has established a rational basis for her action in promulgating regulations based on the submitted amendment, procedural irregularities at the Council level will not justify invalidating the regulations. *Alaska Factory Trawler Ass'n v. Baldrige*, 831 F.2d 1456, 1464 (9th Cir. 1987); *Trawler Diane Marie, Inc. v. Brown*, 918 F. Supp. 921, 928 (E.D.N.C. 1995) (irregularities at Council level did not materially affect Secretary's decisionmaking so as to render rule infirm), *aff'd sub nom. Trawler Diane Marie, Inc. v. Kantor*, 91 F.3d 134 (4th Cir. 1996); *Louisiana v. Baldridge*, 538 F. Supp. 625, 630 n.1 (E.D. La. 1982) (procedural irregularities not "actionable absent affirmative proof that the deviation makes the [decision] arbitrary and capricious").

Because any proposal by the Council is only that, there is a disconnect between Plaintiffs' challenge to the composition of the Council and the harm alleged from the challenged regulation issued by the Secretary. It is not fairly traceable, and this is fatal to Plaintiffs' standing.

2.   **Plaintiffs Lack Standing to challenge DAARP Rauch's actions with respect to the Amendment 54 Final Rule**

Plaintiffs also do not have standing for their claim involving DAARP Rauch. They base their standing claim on the incorrect assumptions that (1) DAARP Rauch has the "authority to issue rules"; and (2) used that authority to issue the Final Rule in this case. ECF No. 7 at 34-36. Plaintiffs fundamentally misunderstand the nature of the Fisheries Service's rulemaking process and DAARP Rauch's role in that process. Only the AA, as head of the Fisheries Service, issues rules on behalf of the Secretary. DAARP Rauch has no authority to issue regulations and, consistent with this lack of legal authority, did not issue the Final Rule. At summary judgment, Plaintiffs cannot rely on "mere allegations";

they "must set forth by affidavit or other evidence specific facts" supporting standing. *Lujan*, 504 U.S. at 561 (quotation marks omitted). And Plaintiffs may not premise their standing on an erroneous legal conclusion, especially at the summary judgment stage. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (federal courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Plaintiffs can make no argument that DAARP Rauch's "issuance" of the Final Rule is the cause of their injury because he did not issue the Final Rule, nor can they ask this Court to redress their injury by vacating the Final Rule or enjoining its enforcement.[2] Instead, AA Coit, a properly appointed inferior officer, issued the Final Rule.

On February 17, 2023, AA Coit received correspondence asking for her review of an issues advisory for Amendment 54, explaining that the Council had approved Amendment 54 at its October 2022 meeting and that the Fisheries Service was "developing a proposed rule to implement Amendment 54." AR8538-39.[3] This correspondence included as attachments the issues advisory for the proposed rule and Amendment 54. AA Coit responded that she "[r]eviewed and approve[d]" the issues advisory. AR8544. On February 23, 2023, AA Coit received correspondence asking for review of the proposed

---

[2] Plaintiffs' brief includes several quotes from an interview DAARP Rauch gave in 2016. *See, e.g.*, ECF No. 7 at 19, 21, 36. This interview is not in the administrative record. Judicial review is "limited to the record compiled by the agency" in this case. *See Medina Cnty. Env't. Action Ass'n*, 602 F.3d at 706 (5th Cir. 2010). The interview thus falls outside the scope of judicial review. Even if the Court considers this interview, which it should not, and even if DAARP Rauch's comments could be interpreted as inconsistent with the Executive Branch's long-standing interpretation and implementation of the Magnuson Act, his statements are not authoritative and should be disregarded. Similarly, if DAARP Rauch's comments suggest that he has the power to issue regulations, they should be disregarded because he did not issue the Final Rule as the administrative record for the Final Rule demonstrates.

[3] Citations to the Administrative Record refer to the Bates number (xxxx) as shown in the following example: ARxxxx.

rule to implement Amendment 54 that included several attachments, including the draft proposed rule and an accompanying decision memorandum. AR8575-613. AA Coit responded that she "reviewed and approve[d]" the proposed rule. AR8614.

On May 12, 2023, AA Coit received an email with a spreadsheet containing all potential rules to be discussed at the biweekly Fisheries Service management meeting, including a potential rule implementing Amendment 54. AR8728-33. AA Coit attended that management "tag up" meeting. AR8726. After this meeting, AA Coit received correspondence with the Final Rule for her review, explaining that there were "no changes from the proposed rule," and that "[g]reater amberjack are overfished and undergoing overfishing" so the "[annual catch limit] needs to be reduced substantially for the rebuilding plan." AR8734. Included with this correspondence to AA Coit was a draft Final Rule and the decision memorandum containing more information about the Final Rule. AR8735-85. The decision memorandum explains how the Amendment 54 rule modifies the sector annual catch limits and annual catch targets for amberjack, summarizes all public comments, and contains the statutorily required consistency determinations of the Final Rule with the Magnuson Act and other applicable law. AA Coit, after receiving this information, responded that she "[r]eviewed and approve[d]," AR8786, after which time the final decision memorandum was signed. AR8787-92.

AA Coit is an "inferior officer" properly appointed under the Appointments Clause. Reorganization Plan No. 4 of 1970, 84 Stat. 2090 (1970) (providing that the AA "shall be appointed by the Secretary, subject to approval of the President"); AR8881-83. She has the authority to issue this rule. *See Massachusetts v. Pritzker*, 10 F. Supp. 3d 208, 212, 212 n.4 (D. Mass. 2014) (recognizing that the Fisheries Service, as the Secretary's designee, has

authority to promulgate certain regulations under the Magnuson Act). In line with this legal authority, AA Coit participated in the rulemaking process and ultimately issued the Final Rule.

Plaintiffs make no argument that AA Coit's appointment is unconstitutional or that she lacked legal authority to issue the Final Rule. Instead, Plaintiffs erroneously contend that the National Oceanic and Atmospheric Administration ("NOAA") Organizational Handbook states "the Assistant Administrator has subdelegated the power to *issue* rules for publication in the Federal Register and Code of Federal Regulations to [DAARP Rauch]." ECF No. 7 at 12 (emphasis added). It does not. Instead, it states that DAARP Rauch has delegated authority for "*[s]ignature* of material for publication in the Federal Register and the Code of Federal Regulations." AR8861-71 (emphasis added). This statement in the NOAA Handbook that DAARP Rauch has the legal authority to "sign" material for publication in the Federal Register is plainly not an admission that DAARP Rauch has "the power to issue rules," ECF No. 7 at 12. The signature of material for publication in the Federal Register is a "ministerial task[]"—not a significant exercise of authority—and thus may be performed by a non-officer employee. *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 881 (1991).

Because Plaintiffs' alleged injury does not stem from DAARP Rauch issuing the Final Rule, and is instead traceable to AA Coit, whose legal authority they do not challenge, Plaintiffs have not "sustain[ed]" an injury "from an [act by DAARP Rauch] that allegedly exceeds [his] authority," *Seila*, 140 S. Ct. at 2196. Plaintiffs' faulty premise that DAARP Rauch "issued" the Final Rule also means that Plaintiffs do not satisfy the redressability requirement for Article III standing. Any injuries to Plaintiffs are caused by the

independent action of the Secretary via AA Coit, as head of the Fisheries Service, and any favorable judgment directed at DAARP Rauch as the allegedly unconstitutional employee would not redress their injuries.

## B.   The Council, individual Council members, and designees are improper defendants

Plaintiffs lack standing to bring this case. But even if the Court were to find that Plaintiffs have standing, the Court should dismiss the Council, individual Council members, and Council member-designees as defendants because this case is governed solely by the judicial review provisions of the APA which apply only to federal agencies. The Council is not a federal agency for purposes of the APA, and so plaintiffs are not entitled to review of the Council's actions under the APA. *See J.H. Miles & Co.*, 910 F. Supp. at 1159 (Mid-Atlantic Fishery Management Council was not an agency of the federal government for APA purposes); *Gen. Category Scallop Fishermen v. Sec'y, U.S. Dep't of Com.*, 635 F.3d 106, 112 n.15 (3rd Cir. 2011) ("The fishermen concede—as they must— that the [New England Fishery Management Council] is not itself an 'agency' falling directly under the rulemaking requirements of the APA."); *Coastal Conservation Ass'n v. Locke*, Nos. 2:09-cv-641-FtM-29SPC, 2:10-cv-95-Ftm-29SPC, 2011 WL 4530631, at *14 (M.D. Fla. Aug. 16, 2011) ("Initially, the Court notes that the Gulf Council is not an agency within the meaning of the APA."); *Flaherty*, 373 F. Supp. 3d at 104-10 (D.D.C. 2019) ("Plaintiffs face an ultimately fatal obstacle: the Council is not an "agency" as that term is defined under the [APA]"). It follows that the individual Council members and Council member-designees, who are sued solely in their official capacity because they "comprise the voting Members of the Council that developed Amendment 54 and will develop future

annual amberjack catch limits as mandated by the [Magnuson] Act," ECF No. 1 ¶ 26, are also not subject to suit.

Plaintiffs say they have two causes of action: the Constitution and the Magnuson Act, which incorporates the relevant sections of the APA. *See id.* ¶ 151. They do not. Because Congress has provided an APA remedy for alleged constitutional violations, Plaintiffs may not bring a right of action directly under the Constitution. *Carlson v. Green*, 446 U.S. 14, 18-19 (1980). If Plaintiffs assume that, by bringing constitutional claims, they are exempt from the procedures and forms of relief made available under the APA, they are mistaken. *See* 5 U.S.C. § 706(2)(B) (providing for review of agency actions alleged to be "contrary to constitutional right, power, privilege, or immunity"); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996) ("Where Congress has created a remedial scheme for the enforcement of a particular federal right, we have, in suits against federal officers, refused to supplement that scheme with one created by the judiciary."); *see also Webster v. Doe*, 486 U.S. 592, 602–04 (1988) ("constitutional claims" were not "committed to agency discretion" and could proceed "under the APA"). An action challenging the Final Rule, even an action seeking review of its alleged constitutionality, may proceed only under the APA. And because the Council is not a federal agency, Plaintiffs cannot state a cause of action against the Council under the APA.

Relatedly, Plaintiffs' claims against the Council cannot stand because the Council merely prepared and voted on Amendment 54, neither of which are final agency actions for purposes of judicial review under the APA. *See* 16 U.S.C. § 1855(f)(1)-(2) (expressly providing for judicial review only of "[r]egulations promulgated by the *Secretary*" and "actions that are taken by the *Secretary* under regulations which implement a fishery

management plan, including but not limited to actions that establish the date of closure of a fishery to commercial or recreational fishing." (emphasis added)). Therefore, judicial review of Amendment 54 itself is unavailable. For this additional reason, the Court should dismiss as defendants the Council, individual Council members, and Council member-designees.

## C.     There is no Appointments Clause Infirmity in the Council or DAARP Rauch

As explained above, Plaintiffs lack standing to bring this case. But even if the Court were to find that Plaintiffs have standing, which it should not, the Court should grant defendants summary judgment in full because each of Plaintiffs' three claims lacks merit. First, Council members are not officers of the United States because they do not occupy a continuing position and do not exercise significant authority. Second, DAARP Rauch did not issue the Final Rule, and Plaintiffs make no claim that AA Coit, who did issue the Final Rule, lacked the legal authority to do so.

### 1.     Council Members are not "officers of the United States"

Plaintiffs' first claim fails because Council members are not "officers of the United States" under the Appointments Clause. The Appointments Clause specifies how the President may appoint officers who help him carry out his responsibilities. *United States* v. *Arthrex, Inc.*, 141 S. Ct. 1970, 1978 (2021). Principal officers must be appointed by the President with the advice and consent of the Senate, while inferior officers may be, if authorized by Congress, appointed by the President alone, the head of the department, or a court. *Id.* (citing U.S. Const. art. II, § 2, cl. 2). For an individual to qualify as an officer, the individual must "occupy a 'continuing' position established by law[,]" and must exercise "significant authority pursuant to the laws of the United States." *Lucia v. Sec. &*

*Exch. Comm'n*, 138 S. Ct. 2044, 2051 (2018) (citations omitted). Council members meet neither requirement. Because Council members are not "officers," the Court need not delve into Plaintiffs' arguments about the propriety of their appointment as principal or inferior officers.

### a.   Council Members do not occupy a "continuing" position

Council members are not officers because their duties are episodic and temporary. The Council typically meets only five times a year, and each meeting lasts around one week. AR1719-23; AR2196-200; AR2604-08; AR3091-95; AR3710-14. Accordingly, a Council member's work is performed only when called upon at discrete moments throughout the year. 16 U.S.C. § 1852(e)(3) ("Each Council shall meet at appropriate times and places in any of the constituent States of the Council at the call of the Chairman or upon the request of a majority of its voting members."). These episodic meetings are merely temporary assignments—a far cry from the "career appointments" of the U.S. Securities and Exchange Commission ("SEC") Administrative Law Judges ("ALJs") considered in *Lucia*. The compensation that Council members receive for their work is similarly limited. Apart from the Fisheries Service Regional Administrator, who performs many duties aside from service on the Council, Council members are not employed by the Federal Government. *See, e.g.*, 16 U.S.C. § 1852(a)(1)(E) (composition of the Gulf of Mexico Council); (b)(1) (voting members include State officials and Secretarial appointees); (b)(2)(B) (directing the Secretary to appoint Council members to "ensure a fair and balanced apportionment, on a rotating or other basis, of the active participants (or their representatives) in the commercial and recreational fisheries"). The Magnuson Act dictates that appointed Council members "who are not employed by the Federal Government or any State or local government" receive not a salary but "compensation at

the daily rate" for only those times when they are "engaged in the actual performances of duties for such Council." *Id.* § 1852(d). As expressly acknowledged in Section 1852(d), no members of the Gulf of Mexico Council (except the Fisheries Service Regional Administrator) are federal employees, and those members employed by a State or local government receive no compensation at all from the Federal Government.

The limited terms for appointed members, episodic nature of their duties, and limited "daily rate" compensation stands in a sharp contrast to cases in which courts have found that individuals occupy a "continuous and permanent" position. For example, in *Lucia* the Court held that ALJs who received career appointments were officers. 138 S. Ct. at 2053. Similarly, in *Freytag* the inquiry was whether special trial judges at the Federal Tax Court were officers. 501 U.S. at 880-82. The Council members are more like the civil surgeon appointed by the pension commissioner in *United States v. Germaine*, 99 U.S. 508, 512 (1878), whom the Court found was not an "officer" under the Appointments Clause because the tenure, duration, emolument, and duties of the job were merely occasional and temporary. Also instructive is *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 758 (5th Cir. 2001) (en banc), where the Fifth Circuit found no continuing and formalized relationship sufficient to establish the constitutional definition of "officer" where the qui tam relators at issue were not, among other facts, "required to establish their fitness for public employment." (footnote omitted). The Court should not consider "the state-bureaucracy Members [who] hold their positions indefinitely," ECF No. 7 at 17, and Council members who are employed by a private entity to be officers of the United States because "[t]he Appointments Clause governs the selection of public officers—it says nothing about the exercise of public power by private persons." *Melcher v. Fed. Open Mkt.*

*Comm*, 644 F. Supp. 510, 521 (D.D.C. 1986), *aff'd on other grounds*, 836 F.2d 561 (D.C. Cir. 1987).

Council members perform their duties only episodically, and appointed members serve limited terms. *Compare Lucia*, 138 S. Ct. at 2053 ("Far from serving temporarily or episodically, SEC ALJs receive[ ] a career appointment.'"), *with* 16 U.S.C. § 1852(b)(3) ("Each voting member appointed to a Council by the Secretary in accordance with [§ 1852(b)(2)] shall serve for a term of 3 years. . . ."). The nature of their work while serving in these terms lacks the hallmarks of both "tenure and duration" that the *Lucia* Court highlighted. *Lucia*, 138 S. Ct. at 2051 (cleaned up). This, considered alongside the daily rate compensation that appointed Council members receive and the lack of federal compensation received by state official members, means that Plaintiffs have failed to demonstrate that Council members have "a continuing and formalized relationship of employment with the United States Government[,]" such that they need be appointed pursuant to the Appointments Clause. *Riley*, 252 F.3d at 757 (citations omitted).

**b.    Council Members do not wield "significant authority"**

Even if the Court finds that Council members occupy a "continuing and permanent position," they are not "officers" within the meaning of the Appointments Clause because they cannot exercise "significant authority." Neither FMPs nor FMP amendments are self-executing and the Secretary (through the AA, as head of the Fisheries Service) has the sole authority to promulgate binding regulations.

Plaintiffs mischaracterize the Secretary's role under the Magnuson Act; it is far more than "limited." ECF No. 7 at 9. The Magnuson Act makes clear that only the Secretary, not the Council, has the authority to independently review, approve, and implement a Council proposal by promulgating the Council's recommendations through a

regulation. *See* 16 U.S.C. §§ 1852(h)(1), 1854(a)-(b) (Council FMP and agency rulemaking); *see also id.* §§ 1854(c), 1855(c)-(d) (other agency rulemaking authorities).

At the very outset, the Secretary has the authority to "disapprove" an FMP or amendment to an FMP. 16 U.S.C. § 1854(a)(3). The power to alter a proposed regulation before it becomes final also lies solely with the Secretary, ensuring that it is the Secretary, rather than the Council, who retains the discretion to determine the content of what regulations should contain. *Id.* § 1854(b)(3) (explaining the Secretary's discretion to determine the content of a final rule). If the Secretary uses her discretion to alter the final regulation from what was proposed to her by the Council, the Magnuson Act requires only that she "consult with the Council" about the revision and publish an explanation of the revision in the Federal Register. *Id.*

Indeed, the Magnuson Act empowers the Secretary to prepare FMPs without the input of a Regional Fishery Management Council, if the Council fails to develop and submit a Plan or if the Secretary disapproves of the Plan submitted. 16 U.S.C. § 1854(c). The Act also empowers the Secretary to promulgate "emergency regulations or interim measures necessary to address [an] emergency or overfishing" when the Secretary finds that "an emergency exists or that interim measures are needed to reduce overfishing." *Id.* § 1855(c)(1). These emergency regulations or interim rules may remain in effect for 180 days and may be extended for another 180 days if public comment is permitted, *id.* § 1855(c)(3)(B). If the emergency or interim rule is in response to a "public health emergency or an oil spill," it may "remain in effect until the circumstances that created the emergency no longer exist," *id.* § 1855(c)(3)(C). The power to implement emergency or interim rules is "legally and historically distinct from [the Secretary's] power to issue rules to implement

FMPs and amendments." *Associated Fisheries of Maine v. Evans*, 350 F. Supp. 2d 247, 255 (D. Me. 2004).

The Secretary's statutory authority to prepare her own Fishery Management Plan or disapprove the Council's plan or amendments, even if not exercised here, demonstrates that the Council does not wield "significant authority." *See Estes v. U.S. Dep't of the Treasury*, 219 F. Supp. 3d 17, 38 (D.D.C. 2016) (explaining that in Appointments Clause challenge a court need not "evaluate the degree of supervision or reversal authority actually exercised by superiors regarding the particular agency decision at issue, but rather the extent to which relevant statutes or regulations provide for such oversight as a structural matter").

The Secretary must also independently review whether the Council's recommendation is "consistent with the national standards, the other provisions of this chapter, and any other applicable law." 16 U.S.C. § 1854(a)(1)(A). This consistency determination is no rubber stamp. It imbues the Secretary with wide discretion to use her judgment in determining whether and how to move forward with any action proposed by the councils.

The National Standards require the Secretary "to exercise discretion and judgment in balancing" several competing factors. *All. Against IFQs v. Brown*, 84 F.3d 343, 350 (9th Cir. 1996). For example, National Standard One states that conservation and management measures "shall prevent overfishing" and at the same time, "achiev[e], on a continuing basis, the optimum yield from each fishery." 16 U.S.C. § 1851(a)(1). The Magnuson Act defines "optimum" to mean "the amount of fish which [] will provide the greatest overall benefit to the Nation, particularly with respect to food production and recreational

opportunities, and taking into account the protection of marine ecosystems." 16 U.S.C. § 1802(33). Optimum yield is determined by first calculating "maximum sustainable yield," then adjusting it "as reduced by *any relevant* social, economic, or ecological factor." *Id.* (emphasis added). Determining whether the outcome of any proposal by the Council will meet National Standard One's goal of "optimum yield" thus necessarily requires the Secretary to balance conservation and exploitation of fishery resources. Other National Standards require the Secretary to ensure that any proposal by the Council fairly and equitably allocates fishing privileges among the states, minimizes adverse economic impacts on communities, and promotes the safety of human life at sea. *See id.* § 1851(a)(4), (8), and (10). The National Standards thus present "numerous—and oftentimes competing—statutory objectives" that the Secretary must balance in evaluating an FMP and FMP amendment, and the Secretary may not promulgate an implementing regulation that is inconsistent with the ten National Standards. *Conservation Law Found. v. Mineta*, 131 F. Supp. 2d 19, 27 (D.D.C. 2001). The Council must also abide by the National Standards in developing FMPs. The Council receives substantial direction to assist in the development of FMPs from the Secretary through the National Standard advisory guidelines, 50 C.F.R. § 600.305, as well as through the participation of the Fisheries Service Regional Administrator, who works for the Secretary and is a voting member of the Council. 16 U.S.C. § 1852(b)(1)(B).

The Secretary must also determine whether a Council proposal is consistent with "other applicable law," *id.* § 1854(a)(1)(A) and (b)(1), including, but not limited to, the Endangered Species Act, Marine Mammal Protection Act, National Environmental Policy Act, Regulatory Flexibility Act, and tribal treaty rights. *See Operational Guidelines for the*

*Magnuson Act Process, Table X at pdf p. 31*, National Oceanic and Atmospheric Administration (Oct. 25, 2017), https://media.fisheries.noaa.gov/dam-migration/01-101-03.pdf. The decision memorandum for the Final Rule demonstrates that the Secretary, acting through the Fisheries Service, conducted an independent evaluation of the Council's recommendation to determine whether the proposed regulation was consistent with the Magnuson Act and other applicable law. AR8787-92.

The Council's inability to independently execute a rule and the Secretary's retention of ultimate authority over what becomes a legally enforceable rule distinguishes the Council and its limited, advisory role from those cases in which courts have determined that an entity is an officer under the Appointments Clause. For example, in *Buckley v. Valeo*, by contrast, the Court was considering the roles of the members of the FEC, which had "primary and substantial responsibility for administering and enforcing the [Federal Election Campaign] Act," record-keeping, disclosure, investigative functions, and extensive rule making and adjudicative powers.  424 U.S. 1 at 110 (1976).

The relationship between the Council and the Fisheries Service is more like the relationship between the Horseracing Authority and the Federal Trade Commission ("FTC") under the amended Horseracing Safety and Integrity Act.[4] The Sixth Circuit in *Oklahoma v. United States* held this statute was lawful because the FTC retained the discretion to "abrogate, add to, and modify the rules that bind the [Horseracing Authority,]" and thus had "the final say" over implementation of the Act. 62 F.4th 221, 225 (6th Cir. 2023) (internal quotation marks omitted). Although the challenge in *Oklahoma* was one of

---

[4] In *National Horseman's Benevolent & Protective Association v. Black*, 53 F.4th 869 (5th Cir. 2022), the Fifth Circuit held that the prior version of the Horseracing Safety and Integrity Act was invalid. Congress then amended the statute, which the Sixth Circuit upheld.

non-delegation, the case is instructive as the court considered whether the Horseracing Authority had "bec[ome] the Act's primary rule-maker" and so "was not subordinate to the relevant public agency" in "critical ways." *Id.* The FTC's oversight role in *Oklahoma* is like the role of the Secretary in the Magnuson Act: it is the Secretary that has the ultimate responsibility for making decisions about FMPs and FMP amendments, and it is the Secretary, not the Council, who implements those decisions through regulations.

The Executive Branch's statements reinforce that the Councils' role is solely advisory, and that fishery management is subject to the discretion of the Secretary, who makes the rules under the Magnuson Act. *See* President Trump signing Statement on 2018 amendments to Magnuson Act, 2018 WL 6839393 (Dec. 31, 2018) ("Keeping with past practice of the executive branch, my Administration will treat the plans promulgated by the Council as advisory only; the adoption of the plans will be subject to the discretion of the Secretary of Commerce as part of the regulatory process described in section 304 of the [Magnuson Act]."); *see also* President George W. Bush signing Statement accompanying 2006 Magnuson-Stevens Reauthorization Act, 2007 U.S.C.C.A.N. S83, 2007 WL 892712 (Jan. 12, 2007) ("The executive branch shall construe these provisions in a manner consistent with the Appointments Clause"); President Clinton signing statement accompanying 1996 Sustainable Fisheries Act, 1996 U.S.C.C.A.N. 4120, 1996 WL 787969. These signing statements demonstrate that the Magnuson Act can be interpreted to be consistent with the Appointments Clause, and such treatment is consistent with principles of constitutional avoidance. *See Michaelson v. U.S. ex rel. Chi., St. Paul, Minneapolis & Omaha Ry. Co.*, 266 U.S. 42, 64 (1924).

Indeed, many courts have examined the role and function of the Councils and have found that Council members have "no authority to do anything," as their functions are limited to collectively making fishery management recommendations, while final decision-making power rests with the Fisheries Service. *See e.g.*, *J.H. Miles & Co.*, 910 F. Supp. at 1157-59 (rejecting challenge to internal Council policy because the Council is not an agency within the meaning of the APA and concluding that "the Councils appear to be designed to function as advisers, i.e., experts in the field who assist the Secretary in his role in managing the fishery"). Several courts have discussed specifically that a Council's proposal has no legal effect without implementing regulations. *Flaherty*, 373 F. Supp. 3d at 104-10 (recognizing that while the Council is "heavily involved" in the development of plans and implementing regulations, the Council lacks the authority to take final action, which remains with the Secretary and thus the entire structure of the Magnuson Act "reinforces the advisory nature of the Council's role."); *Yakutat, Inc. v. Evans*, No. C02-1052R, 2003 WL 1906336, at *3 (W.D. Wash. Apr. 10, 2003) (rejecting the argument that a Council exercises significant authority over FMPs because plans are not self-executing), *aff'd sub nom. Yakutat, Inc. v. Gutierrez*, 407 F.3d 1054 (9th Cir. 2005); *Nw. Env't. Def. Ctr. v. Evans*, No. CIV. 87-229-FR, 1988 WL 360476, at *8 (D. Or. Aug. 12, 1988) ("Significant authority over federal government actions comes from the ability to promulgate, not propose, implementing regulations for a[n FMP] or plan amendment."); *Goethel v. Pritzker*, No. 15-CV-497-JL, 2016 WL 4076831 (D.N.H. July 29, 2016) (dismissing Appointments Clause challenge to FMP amendment, and reiterating that plan amendments cannot establish rights, obligations, or legal consequences without implementing regulations, which only the Secretary can promulgate), *aff'd on other*

29

*grounds, Goethel,* 854 F.3d 106; *Fishing Co. of Alaska v. Gutierrez*, 510 F.3d 328, 333 (D.C. Cir. 2007) (explaining that "[t]he Council is free to submit comments on a proposed rule (as are others), but power to alter the rule before it becomes final rests only with the Secretary" (citing 16 U.S.C. § 1854(b)(3)).

Plaintiffs do not grapple with this substantial body of caselaw. Instead, they lean heavily on *Lucia* and *Freytag*. ECF No. 7 at 19-20. But Council members are distinguishable from the SEC ALJs at issue in *Lucia*, who, "exercise[d] significant discretion" in the course of "tak[ing] testimony, conduct[ing] trials, rul[ing] on the admissibility of evidence, and . . . enforc[ing] compliance with discovery orders." 138 S. Ct. at 2052 (internal quotation marks and citations omitted). The *Lucia* Court held that the ALJs were officers because they exercised "nearly all the tools of federal trial judges" and, at the close of a hearing, issued opinions that could be "deemed the action of the Commission" without further review. *Id.* at 2053-54. Similarly, the Tax Court special trial judges in *Freytag* had "the power to enforce compliance with discovery orders," 501 U.S. at 882, and to "punish contempts by fine or imprisonment," *id.* at 891. In light of the special trial judges' role within the Tax Court, the government *conceded* that they acted as inferior officers in cases in which they could enter final decisions. 501 U.S. at 882. The Supreme Court accepted that concession and held that "[s]pecial trial judges are not inferior officers for purposes of some of their duties under [the statute] but mere employees with respect to other responsibilities." *Id.* at 882. The special trial judges' final decision-making authority, thus, was significant to the Court's decision.

The Council possesses no similar power to enter final decisions. Instead, the Secretary, a principal officer within the Executive Branch, retains the ability to review the

advisory recommendations of the Council, and, importantly, the Council's recommendations carry the force of law only *after* the Secretary chooses to promulgate an implementing regulation. The Secretary also retains the authority to, under certain circumstances, prepare her own plan and implementing regulations, independent of the Council. 16 U.S.C. § 1854(c). Thus, the Council is strictly an advisory body and Council members do not wield "'significant discretion' when carrying out 'important functions.'" *Lucia*, 138 S. Ct. at 2053; *cf. Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 259 F. Supp. 2d 783, 796 (W.D. Wis. 2003) (gubernatorial concurrence provision in Indian Gaming Regulatory Act does not violate Appointments Clause because governor exercises no "significant authority" where, for example, governor "does not have sole authority to enforce" the statute and cannot require Secretary of the Interior to take land for gaming purposes), *aff'd*, 367 F.3d 650 (7th Cir. 2004).

Plaintiffs also cite § 1854(h) to contend that "now that Amendment 54 has taken effect, only the Council will have the power to lift its restrictions." ECF No. 7 at 18-19. As a threshold matter, Amendment 54 has not "taken effect" because it has no independent legal effect without the implementing regulations that only the Secretary can promulgate. And § 1854(h) limits the ability of the *Council* to repeal or revoke its own FMP by a three-quarters majority. That provision does not speak to the Secretary's significant authority to, for example, prepare her own Secretarial plan and implementing regulations, independent of the Council. *See* 16 U.S.C. § 1854(c), (h). Plaintiffs' attempt to rely on Section 1854(h) to argue that Council members are "vested with the *general* rulemaking authority" and so are "plainly officers" is unavailing. ECF No. 7 at 19 (emphasis in original). *cf. Flaherty*, 373 F. Supp. 3d at 110. (Reasoning that "limited veto power, upon consideration of the

Council's otherwise non-binding activities and functions within the broader scheme of the [Magnuson Act]" is insufficient to conclude that the Council has "substantial independent authority" such that it is an agency for purposes of the APA).

In sum, Council members are not "officers of the United States." They do not occupy continuing positions; their work occurs during discrete moments during the year and for this they receive limited daily rate compensation. They do not wield significant authority because the Council's recommendations about FMPs and amendments to those plans are reviewable by the Secretary. Unless the Secretary implements a regulation adopting the Council's recommendation, the Council's recommendations carry no legal force. The Council has no power to execute or administer law, distinguishing this from cases in which courts have concluded that a federal office existed, and dooming Plaintiffs' Appointments Clause claims.[5]

### 2. DAARP Rauch did not "issue" the Amendment 54 Final Rule

Plaintiffs' claim attacking the Final Rule as improperly "issued" by DAARP Rauch, ECF No. 7 at 27-31, fails as well.

As a threshold matter, any Appointments Clause challenge to DAARP Rauch has been forfeited because it was not raised during the rulemaking proceedings. During the public comment period, the Fisheries Service received a public comment stating only that the "Council process under the Magnuson-Stevens Act violates the Appointments, Executive Vesting, and Take Care clauses of the U.S. Constitution and, as a result, this rulemaking is legally invalid[,]" because "[c]ouncil members are not properly appointed to

---

[5] Because Council members are not officers, the Court need not reach Plaintiffs' second claim that they are unlawfully insulated from removal. *See Seila*, 140 S. Ct. at 2196 (generally providing that removal restrictions apply only to officers).

their positions as officers of the United States." 88 Fed. Reg. at 39198. Although DAAR Rauch also signed the proposed rule that was published in the Federal Register, 88 Fed. Reg. at 14964, no public comment raised any concern with his actions, let alone a concern with his "issuance" of the rule. By failing to raise it in public comments, the Fisheries Service was deprived of the opportunity to contemporaneously address any error. *See Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002) ("[i]t is well established that issues not raised in comments before the agency are waived and this Court will not consider them."); *In re DBC*, 545 F.3d 1373 (Fed. Cir. 2008) (holding that plaintiff waived argument that a Board of Patent Appeals decision was invalid because two judges were appointed in violation of the Appointments Clause by failing to raise that issue before the Board); *Lucia*, 138 S. Ct. at 2055 (recognizing that, to obtain relief under the Appointments Clause, a plaintiff must first make a "timely challenge" to the "validity of [the] appointment before the Commission" or agency at issue.).

Even if this Court finds that Plaintiffs have not forfeited this claim, Plaintiffs' entire argument that DAARP Rauch is unconstitutionally insulated from removal as part of the "insulated cadre of 'Senior Executive Service' officers," ECF No. 7 at 34, is based on the fiction that DAARP Rauch has the "authority to issue rules," and "issues regulations . . . as he did here." ECF No. 7 at 34, 36; *see also* ECF No. 1 ¶ 159 (claiming that DAARP Rauch "exercises the core executive function of unilaterally *issuing* final binding regulations" (emphasis added)); *Id.* ¶ 160 (asking Court to "declare that [DAARP Rauch's] *issuance* of the Final Rule and accompanying regulations was unlawful" (emphasis added)). As discussed above, AA Coit is a properly appointed inferior officer who serves as the head of the Fisheries Service and issued the Final Rule. Because Plaintiffs' entire

33

argument flows from the mistaken premise that DAARP Rauch issued the Final Rule, this claim fails. [6]

## IV.    CONCLUSION

The central aim of the Appointments Clause is to ensure accountability: "Without a clear and effective chain of command, the public cannot 'determine on whom the blame or the punishment of a pernicious measure . . . ought really to fall.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 498 (2010) (quoting The Federalist No. 72, at 476 (J. Cooke ed. 1961) (A. Hamilton)). That principle is not at risk here. The Gulf Council acted as a body of advisors, not a body of "officers" exercising significant authority, in issuing Amendment 54. Likewise, DAARP Rauch did not issue the Final Rule; he merely signed it for publication in the Federal Register, a ministerial task that does not transform him into an officer. The Final Rule was duly promulgated by AA Coit as head of the Fisheries Service, ensuring that final decisionmaking authority is reserved to politically

---

[6] Although no remedy is warranted, if the Court finds any flaw with the Final Rule, Federal Defendants respectfully request the opportunity to offer supplemental briefing on remedy, including severability. *Ayotte v. Planned Parenthood of N. New Engl.*, 546 U.S. 320, 328-329 (2006) ("[W]hen confronting a constitutional flaw in a statute, we try to limit the solution to the problem" by disregarding the "problematic portions while leaving the remainder intact."); *Arthrex*, 141 S. Ct. at 1986 (noting in Appointments Clause case "when confronting a constitutional flaw in a statute, we try to limit the solution to the problem by disregarding the problematic portions while leaving the remainder intact." (internal quotations omitted)). Questions of remedy are complex, and the appropriate remedy will turn on the contours of any ruling on the merits by the Court. For example, if the Court finds that DAARP Rauch is unconstitutionally insulated from removal, defendants would submit that the appropriate remedy is ratification of the Final Rule by a duly appointed officer whose appointments and authority are undisputed. *See Guedes v. ATF*, 920 F.3d 1, 13 (D.C. Cir. 2019) ("a properly appointed official's ratification of an allegedly improper official's prior action … resolves" an Appointments Clause claim "on the merits by 'remedy[ing] [the] defect' (if any) from the initial appointment." (brackets in original)); *Alfa Int'l Seafood v. Ross*, No. 17-31, 2017 WL 3738397, at *13 (D.D.C. June 22, 2016) (collecting cases applying principle that ratification resolves Appointments Clause claim to rulemaking proceedings).

accountable officials. Plaintiffs' unpersuasive Appointments Clause challenge to the Final

Rule should be rejected and defendants' motion for summary judgment should be granted

in full.

Dated:  August 31, 2023                   Respectfully submitted,

TODD KIM
Assistant Attorney General
S. JAY GOVINDAN
Section Chief
MEREDITH L. FLAX
Deputy Section Chief

/s/ Shampa A. Panda
SHAMPA A. PANDA (*lead counsel*)
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0431
Fax: (202) 305-0275
E-mail: shampa.panda@usdoj.gov
CA Bar No. 316218

DARREN J. LAMARCA
*United States Attorney*
s/ James E. Graves, III
James E. Graves, III
Assistant United States Attorney
501 East Court Street, Suite 4.430
Jackson, Mississippi 39201
Telephone:    (601) 965-4480
Facsimile:    (601) 965-4032
Email:        James.Graves@usdoj.gov
MS Bar No.    102252

Of Counsel:

MARA LEVY,
Attorney-Advisor
Office of the General Counsel
National Oceanic and Atmospheric Administration

U.S. Department of Commerce
263 13th Avenue South
St. Petersburg, FL
33701
Tel: (727) 824-5302
Mara.Levy@noaa.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

<div style="margin-left:40%">

*/s/ Shampa A. Panda*
SHAMPA A. PANDA
Trial Attorney (CA Bar No. 316218)
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0431
Fax: (202) 305-0275
E-mail: shampa.panda@usdoj.gov

*Attorney for Defendants*

</div>