# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

GEORGE D. ARNESEN, *et al.*

       *Plaintiffs,*

  *v.*

GINA RAIMONDO, U.S. Secretary of Commerce, *et al.*

       *Defendants.*

No. 1:23-cv-00145-TBM-RPM

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................3

   I.    Plaintiffs have standing............................................................................................3

      A.    Plaintiffs have standing to sue NMFS, Assistant Administrator Coit, and Secretary Raimondo.....................................................................................................................3

      B.    The Council caused Plaintiffs' injuries..................................................................4

      C.    DAARP Rauch also caused Plaintiffs' injuries. ....................................................9

      D.    This Court can redress Plaintiffs' injuries............................................................10

   II.    Plaintiffs can sue the Council and its Members......................................................11

   III.    Council Members are Officers of the United States. ...............................................14

   IV.    DAARP Rauch is an Officer of the United States. .................................................18

   V.    The Court should grant the relief requested in Plaintiffs' Complaint. ....................20

CONCLUSION ..................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*Alaska Factory Trawler Ass'n v. Baldridge,*
    831 F.2d 1456, 1466 (9th Cir. 1987) ........................................................................... 11

*Am. Fed. of Gov't Emps., AFL-CIO v. Pierce,*
    697 F.2d 303 (D.C. Cir. 1982) ................................................................................. 4, 5

*Arthrex, Inc. v. Smith & Nephew,*
    941 F.3d 1320 (Fed. Cir. 2019), *vacated on other grounds* 141 S. Ct. 1970 (2021) ................................ 19

*Bennett v. Spear,*
    520 U.S. 154 (1997) ............................................................................................ 7, 8

*Carr v. Saul,*
    141 S. Ct. 1352 (2021) ........................................................................................... 19

*City of Waukesha v. EPA,*
    320 F.3d 228 (D.C. Cir. 2003) ................................................................................... 4

*Collins v. Yellen,*
    141 S. Ct. 1761 (2021) ..................................................................................... 1, 7, 9

*Dep't of Com. v. New York,*
    139 S. Ct. 2551 (2019) ................................................................................... 2, 6, 10

*FEC v. NRA Political Victory Fund,*
    513 U.S. 88 (1994) .............................................................................................. 21

*Flaherty v. Ross,*
    373 F.Supp.3d 97 (D.D.C. 2019) ........................................................................... 12, 13

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010) ........................................................................................ 14, 21

*Freytag v. Comm'r,*
    501 U.S. 868 (1991) ............................................................................................. 19

*Grumman Aircraft Eng'g Corp. v. Renegotiation Bd.,*
    482 F.2d 710 (D.C. Cir. 1973) .................................................................................. 12

*Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.,*
    968 F.3d 454 (5th Cir. 2020) ................................................................................... 12

## TABLE OF AUTHORITIES

**Page**

*Harrison Cnty. v. Miss. River Comm'n.*,
No. 19cv986, 2021 WL 4164679 (S.D. Miss. Sept. 13, 2021).....................................................11, 12

*In re DBC,*
545 F.3d 1373 (Fed. Cir. 2008) ................................................................................................19

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,*
684 F.3d 1332 (D.C. Cir. 2012)...........................................................................................10, 21

*J.H. Miles & Co., Inc., v. Brown,*
910 F.Supp. 1138 (E.D. Va. 1995).......................................................................................12, 13

*Jennings v. Rodriguez,*
138 S. Ct. 830 (2018).................................................................................................................18

*La Union del Pueblo Entero v. Abbott,*
618 F.Supp.3d 449 (W.D. Tex. 2022).........................................................................................8

*Lucia v. SEC,*
138 S. Ct. 2044 (2018) .......................................................................................................passim

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992)...................................................................................................................10

*Mobility Workx, LLC v. Unified Patents, LLC,*
15 F.4th 1146 (Fed. Cir. 2021) .................................................................................................19

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
463 U.S. 29 (1983).....................................................................................................................16

*Nat'l Wildlife Fed'n v. EPA,*
286 F.3d 554, 561-62 (D.C. Cir. 2002).....................................................................................20

*Oceana, Inc. v. Ross,*
No. 17-cv-05146, Dkt. No. 124 (C.D. Cal. Nov. 18, 2019) ......................................................15

*Oklahoma v. United States,*
62 F.4th 221 (6th Cir. 2023) .....................................................................................................17

*Seila Law LLC v. CFPB,*
140 S. Ct. 2183 (2020) ................................................................................................................4

## TABLE OF AUTHORITIES

Page

*Soucie v. David,*
   448 F.2d 1067 (D.C. Cir. 1971) ..................................................................................... 2, 12

*Texas v. EEOC,*
   933 F.3d 433 (5th Cir. 2019) ....................................................................................... 1, 4, 5, 9

*Thunder Basin Coal Co. v. Reich,*
   510 U.S. 200 (1994) ..................................................................................................... 19

*TransUnion LLC v. Ramirez,*
   141 S. Ct. 2190 (2021) ................................................................................................. 3

*Trawler Diane Marie, Inc. v. Brown,*
   918 F.Supp. 921, 927-28 (E.D. N.C. 1995) .................................................................. 11

*United States ex rel. Accardi v. Shaughnessy,*
   347 U.S. 260 (1954) ..................................................................................................... 9

*United States v. Arthrex, Inc.,*
   141 S. Ct. 1970 (2021) ................................................................................................. 1, 19

*Weinberger v. Salfi,*
   422 U.S. 749 (1975) ..................................................................................................... 19

STATUTES

5 U.S.C.
   § 701(b)(1) ................................................................................................................... 11

16 U.S.C.
   § 1802(26), (27) ........................................................................................................... 16
   § 1852(g) ....................................................................................................................... 12, 16
   § 1852(h) ....................................................................................................................... 5, 12, 16
   § 1853(a) ....................................................................................................................... 5, 9, 12, 16, 17
   § 1853(c) ....................................................................................................................... 5, 7, 15
   § 1854(a) ....................................................................................................................... passim
   § 1854(b) ....................................................................................................................... 5, 8, 15, 16
   § 1854(c) ....................................................................................................................... passim
   § 1854(h) ....................................................................................................................... 12, 17
   § 1855(c)(2)(A) ............................................................................................................. passim

Administrative Procedure Act ("APA") ................................................................................. passim

## <u>TABLE OF AUTHORITIES</u>

**Page**

Magnuson-Stevens Act ("the Act")..................................................................................... passim

**OTHER AUTHORITIES**

U.S. Const. art. II ........................................................................................................................2, 18

U.S. Const. art. III ............................................................................................................................3

85 Fed. Reg. 7246, 7247 (Feb. 7, 2020) .......................................................................................15

88 Fed. Reg. 39193, 39193 (June 15, 2023) ..............................................................................9, 10

ATTORNEY GENERAL'S GENERAL MANUAL ON THE APA 9 n.1 (1947) .....................................13

Brian D. Feinstein & Jennifer Nou, *Submerged Independent Agencies*, 171 U. PA. L. REV.
    945, 962-65 (2023)...............................................................................................................9

R. Sando, Rauch, Sam: Oral History Interview at 19 (June 30, 2016),
    https://voices.nmfs.noaa.gov/sites/default/files/2018-09/rauch_samuel.pdf.............................8

William R. Rogalski, *The Unique Federalism of the Regional Councils Under the Fishery
Conservation and Management Act of 1976*, 9 B.C. ENV'T AFFS. L. REV. 163, 164–65,
    178 (1980)....................................................................................................................................8

**INTRODUCTION**

George Arnesen and Ryan Bradley are currently unable to fish for amberjack because of decisions by federal officials who serve unlawfully.  George and Ryan would be fishing today if the Gulf of Mexico Fishery Management Council ("Council") had not exercised its authority under the Magnuson-Stevens Act ("the Act") to establish new and sharply reduced catch limits.  The Council Members who made that decision were unlawfully appointed by State Governors and are improperly shielded from removal.  Those officials are thus outside the executive branch's "clear and effective chain of command down from the President" and consequently lack "legitimacy and accountability to the public."  *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1979 (2021) (internal citations omitted).

In maintaining otherwise, the Government primarily recycles the meritless arguments it made in response to Plaintiffs' Motion for a Preliminary Injunction or Alternatively Summary Judgment.  *First*, the Government reasserts that Plaintiffs lack standing because NMFS caused its injuries—not the Council nor Deputy Assistant Administrator for Regulatory Programs (DAARP) Sam Rauch.  *See* Gov. MSJ Br. 6-18.  But the Government entirely ignores one of Plaintiffs' several standing arguments: that *NMFS* harmed them by violating *its* legal obligation to reject Amendment 54 on the ground that an unlawfully appointed Council promulgated it.  *See* ECF No. 1, Pls.' Compl. ¶ 133.  But even aside from that, Plaintiffs plainly have standing to sue the Council.  The Government's contrary argument impermissibly conflates the merits with standing, violating the established rule that courts must "assume, for purposes of … standing," that a plaintiff is "correct on the merits of [his] claim[s]." *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019).  It is also plain as a practical matter that the Council's actions injured Plaintiffs.  The Council played a statutorily mandated, essential, and important role in promulgating Amendment 54 and Plaintiffs' injuries are thus "fairly traceable" to *its* actions.  *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021).  DAARP Rauch likewise played an essential role in promulgating

Amendment 54, making him an additional "de facto" cause of Plaintiffs' injuries. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019).

*Second*, the Government contends Plaintiffs cannot sue the Council or its Members under the Administrative Procedure Act (APA) because the Council is not an "agency." Gov. MSJ Br. 18-20. This argument is both wrong and irrelevant. The Council is an agency because it exercises "substantial independent authority in the exercise of specific functions." *Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971). But the Court need not address that issue because it is irrelevant for at least three reasons: (1) The Government's APA argument does not affect Plaintiffs' separate equitable cause of action under the Constitution; (2) the Court can grant Plaintiffs complete relief solely against the NMFS Defendants; and (3) if the Council is not an agency, then Council Members are officials *within NMFS* and can be challenged just like the ALJs nested within the SEC in *Lucia*.

*Finally*, the Government restates its prior arguments that neither Council Members nor DAARP Rauch are "Officers of the United States" under Article II of the Constitution. As to the Council, the Government reprises its refrain that the Council serves only an "advisory" function. Gov. MSJ Br. 31 ("[T]he Council is strictly an advisory body . . ."). This is incorrect. The Council played an essential, formal, and statutorily mandated role in preparing Amendment 54. *See, e.g.*, 16 U.S.C. § 1854(c) (Secretary cannot issue fishery management plan or amendment when Council is regulating). If the Council had proposed a higher catch limit, Ryan and George would still be out fishing for amberjack. Beyond that, the Council exercises many other important statutory powers—including blocking the Secretary from repealing fishery management plans, blocking the Secretary from adopting any "limited access system," and forcing the Secretary to implement emergency fishing regulations. The Government largely ignores these significant federal powers.

As for DAARP Rauch, the Government's only new argument is that Plaintiffs forfeited their removal challenge because they failed to object to his issuance of the final rule in their comment

challenging the proposed rule.  *See* Gov. MSJ Br. 32-33.  But Plaintiffs could not be expected to challenge something that *had not happened yet*—as they obviously commented *before* DAARP Rauch signed the final rule, which happened only *after* the comment period closed.  Nor is this even the sort of argument that needs to be preserved in a comment before an agency.  The Government thus cannot escape the fact that DAARP Rauch is an Officer of the United States who took essential steps in issuing Amendment 54 while being unlawfully insulated from removal by the President.

The Court should deny the Government's motion for summary judgment and grant Plaintiffs' motion for summary judgment.

## ARGUMENT

### I.      Plaintiffs have standing.

A plaintiff has Article III standing if he (1) suffers a concrete "injury in fact" that was (2) "likely caused by the defendant" and (3) "would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  Plaintiffs satisfy all three prongs.  Defendants do not contest that Plaintiffs are suffering concrete injuries.  *See* Gov. MSJ Br. 7.  Because of Amendment 54, Plaintiffs are losing fishing time they would have had in 2023 and cannot fully get back even if the Court rules in their favor.  *See* Ex. A, Bradley Supp. Decl. ¶ 5-11; Ex. B, Arnesen Supp. Decl. ¶ 5-11.

Defendants do allege Plaintiffs cannot establish causation and redressability.  *See* Gov. MSJ Br. 7-18. But these arguments are meritless.

### A.      Plaintiffs have standing to sue NMFS, Assistant Administrator Coit, and Secretary Raimondo.

The Government repeats its prior failure to address Plaintiffs' standing to sue NMFS and its officials—whose "actions ensured that Plaintiffs would be subjected to the Council's injurious policies."  ECF No. 7, Pls.' PI Br. 33; ECF No. 16, Pls.' PI Rebuttal Br. 6-7 (pointing out Government's failure to address this standing theory).  The Government maintains that *only* NFMS's

decision to approve Amendment 54 injured Plaintiffs.  Gov. MSJ Br. 7.  Even if that is right—it is not—Plaintiffs have standing because they allege that *the agency's* issuance of the Final Rule "exceed[ed] [its] authority."  *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2196 (2020); *see* ECF No. 1, Pls.' Compl. ¶ 133; ECF No. 7, Pls.' PI Br. 33.  Because the Council lacks *any* legal authority, its Members were powerless to submit Amendment 54 for approval in the first place.  Thus, NMFS never received a valid amendment that it could lawfully issue; indeed, NMFS had a statutory *obligation* to reject the policy. 16 U.S.C. § 1854(a)(1)(A).  Because NMFS instead approved it, Plaintiffs have standing to bring claims against NMFS and its officials.

**B.      The Council caused Plaintiffs' injuries.**

Having ignored one of Plaintiffs' bases for standing, the Government focuses on establishing that the Council did not cause Plaintiffs' harms.  *See* Gov. MSJ Br. 7-14.  The Government acknowledges that Plaintiffs do not need to show "a counterfactual world in which a differently structured Council would have reached a different choice."  Gov. MSJ Br. 10-11.  It instead contends that the Council did not cause Plaintiffs' injury because it played only an advisory role with respect to Amendment 54, and that NMFS's decision to implement the Council's work is the sole act that injured Plaintiffs.  *See id.* at 13.  This argument is wrong on two levels.

To start, the Government continues to conflate standing with the merits.  A court must "assume, for purposes of … standing," that a plaintiff is "correct on the merits of [his] claim[s]."  *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019).  In *Texas v. EEOC*, for example, the Fifth Circuit assumed at the summary-judgment stage that the plaintiff was "correct on the merits of its claim" that the EEOC promulgated a guidance document "in violation of the APA."  *Id.* at 447; *accord, e.g.*, *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) ("[I]n reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims."); *Am. Fed. of Gov't Emps.,*

*AFL-CIO v. Pierce*, 697 F.2d 303, 305 (D.C. Cir. 1982) ("For purposes of the standing issue, we accept as valid Congressman Sabo's pleaded legal theory."). Even though Plaintiffs previously cited *Texas v. EEOC, see* ECF No. 16, Pls' Rebuttal Br. 7 n.2—a decision that is both binding and on point—the Government continues to ignore it. *See* Gov. MSJ Br. 14-15 (inviting Court to second-guess Plaintiffs' merits arguments). The Court cannot—at the standing stage—accept the Government's merits argument that the Council serves only an advisory function.

But moreover and regardless, the Government's account of the Council's actions in this case blatantly contradicts the record and the Act. Most of the Government's argument relies on non-binding decisions—chiefly the Ninth Circuit's early 1990s opinion in *Brennen* and the District of Alaska's decision in *UCIDA*—which Plaintiffs have already rebutted. *See* ECF No. 16, Pls.' Rebuttal Br. 8-9. Setting those decisions aside, it is abundantly clear that the Council *had to act* for Amendment 54 to become law. NMFS issued the Final Rule pursuant to the Secretary's authority to adopt *Council policies* as regulations. *See* 16 U.S.C. § 1854(a)–(b). NMFS *could not have done so* without the Council first "prepar[ing] and submit[ting]" Amendment 54. *Id.* § 1852(h)(1). As the Act envisions, the Council did act in this case. The Council concluded that an amendment to the Reef Fish FMP was "necessary." *Id.* § 1852(h)(1). The Council gathered the factual record, relying on advisory committees that report only to it. *Id.* § 1852(h)(6). The Council exercised its policy judgment to determine how much amberjack should be harvested and compiled its conclusions in a 170-page document. *See id.* § 1852(h)(6); ECF No. 6-5 (Exh. E). The Council drafted an implementing regulation that *it* "deem[ed] necessary or appropriate." 16 U.S.C. § 1853(c). The Council sent Amendment 54 to NMFS, which *had* to act on the Council's proposal by either approving it or remanding it to the Council with *recommended* changes that the Council could reject or approve in its discretion. *Id.* §§ 1853(a), 1854(c)(1). Rather than exercise some sort of independent-and-intervening policy

judgment, NMFS summarily accepted Amendment 54 and codified *the Council's* policy judgment in the Code of Federal Regulations.

Struggling to deny the Council's legally and factually essential role in promulgating Amendment 54, the Government employs misdirection by focusing on NMFS's complementary role. *See* Gov. MSJ Br. 7-8, 10-11.  Plaintiffs do not deny that NMFS played a role in implementing Amendment 54; that is why they named NMFS and its officials as defendants.  *See* ECF No. 1, Pls.' Compl. ¶ 133 ("Plaintiffs' injuries are traceable to NMFS, which issued the Final Rule.  As the product of an unconstitutional Council, Amendment 54 is invalid and unlawful, and NMFS should have exercised its authority to reject it.").  But the fact that NMFS played a role in promulgating Amendment 54 *does not negate* Council's essential, important, and central role.  Amendment 54 and its attendant final rule simply would not exist but for the Council's actions, making the Council an undeniable *de facto* cause of Plaintiffs' injuries.  And "Article III requires no more than *de facto* causality." *See Dep't of Com.*, 139 S. Ct. at 2566 (internal quotation marks omitted).[1]  Indeed, considering that the Council gathered the factual record and drafted every word of Amendment 54—just as the Act requires—the Council was the *primary* cause of Plaintiffs' injuries.

In the end, the Government's argument seems to boil down to the fact that NMFS acted last in the Amendment-54 process.  *See* Gov. MSJ Br. 10-12 (focusing on Secretary's actions at end of regulatory process).  But *Lucia* forecloses that argument and indeed makes this an *a fortiori* case.  There, the SEC Commissioners *had* to act for an ALJ's prior decision to become effective.  As the Court explained, the ALJ's "opinion counts for nothing" unless the SEC "adopt[ed] it as [its] own." *Lucia v.*

---

[1] The Government attempts to distinguish *Department of Commerce*, Gov. MSJ Br. 11-12, but those efforts fail.  Compared to this case, standing was substantially *more* attenuated in *Department of Commerce* because there it was premised on how "third parties w[ould] likely react"—even "unlawfully"—in response to defendants' actions.  *Dep't of Com.*, 139 S. Ct. at 2566.  Here, by contrast Plaintiffs' standing requires no "speculation."  *Id.*  The Act *requires* the Council play the primary role in promulgating fishery management plans—and that is precisely what it did here.

*SEC*, 138 S. Ct. 2044, 2054 (2018).  Here, Council proposals take effect as law even if NMFS *does nothing*.[2]  Just as in *Lucia*, the fact that Plaintiffs' injury is caused by multiple decisionmakers—including one earlier in the process and a different one later in the process—does not mean Plaintiffs' injuries are not "fairly traceable" to the first decisionmaker.  *Collins*, 141 S. Ct. at 1779.

The Supreme Court's decision in *Bennett v. Spear*, 520 U.S. 154 (1997), is likewise instructive.  There, the plaintiffs sued the Fish and Wildlife Service (the Service), challenging a biological opinion it issued with respect to a federal land reclamation project.  *See id.* at 157.  In that statutory scheme, a biological opinion had to be sought before a reclamation project could proceed.  *Id.* at 157-58.  In *Bennett*, the Service's biological opinion endorsed the project but required various mitigation measures that hurt plaintiffs.  *Id.* at 157-58.  A different agency, the Bureau of Reclamation (Bureau), had discretion, in light of the biological opinion, on whether to proceed with the project and how to implement the mitigation measures.  *Id.* at 168-69.  Plaintiffs sued only the Service (the earlier decisionmaker), not the Bureau (the final decisionmaker).  *Id.*  The Government argued (like here) that the plaintiffs had standing to sue only the Bureau because the Bureau "retain[ed] ultimate responsibility for determining whether and how a proposed action shall go forward."  *Id.* at 168.

The Court rejected that argument, emphasizing that the defendant's actions need not be "the very last step in the chain of causation."  *Id.* at 169.  While acknowledging that causation could be lacking if the injury was caused by the "independent action of some third party not before the court," the Court reasoned that rule "does not exclude injury produced by determinative or coercive effect

---

[2] The Government continues to insist that Council policies cannot go into effect without NFMS implementing them.  *See* Gov. MSJ Br. 4, 11 ("Only once [NMFS] promulgates a final implementing regulation does the regulation have the force and effect of law.").  Although rebutting this point is not necessary to Plaintiffs' arguments, the Government's position is clearly contradicted by the Act's plain text.  If the Secretary fails to "notify [the] Council" of her decision "within 30 days," then its "plan or amendment shall take effect as if approved."  16 U.S.C. § 1854(a)(3)(C).  While the Government suggests that provision is effectively a dead letter because Council policies are not "self-executing," Gov. MSJ Br. 23, it is hard to see why that is so.  Even assuming that something like a catch limit of zero is not "self-executing," the Council can propose regulations to implement its own plans. 16 U.S.C. § 1853(c).

upon the action of someone else." *Id.* Rejecting the Government's claim that the Service's biological opinion served only an "advisory function," the Court found that "in reality [a biological opinion] has a powerful coercive effect on the [Bureau]." *Id.* at 169. The Court also noted that "the statutory scheme presuppose[d]" that biological opinions "will play a central role in the action agency's decisionmaking process," that biological opinions are "based on an administrative record that is fully adequate for the [Bureau's] decision," and that a federal agency that "deviate[s] from the recommendations contained in a biological opinion bears the burden of articulating . . . its reasons for disagreeing." *Id.* at 169 (internal quotation omitted).

There are many similarities between this case and *Spear*. *First*, the Council's actions had a "determinative or coercive effect" on the Secretary. *Id.* If the Secretary did not act on Amendment 54, it would have gone into effect. 16 U.S.C. § 1854(a)(3)(C). And the Secretary *could not* block Amendment 54 solely on policy grounds. *Id.* § 1854(a)(1), (b)(1). *Second*, the Act also clearly presupposes that the Council would serve as the "primary policy-maker[]" in making Amendment 54. William R. Rogalski, *The Unique Federalism of the Regional Councils Under the Fishery Conservation and Management Act of 1976*, 9 B.C. Env't Affs. L. Rev. 163, 164–65, 178 (1980); R. Sando, Rauch, Sam: Oral History Interview at 19 (June 30, 2016), https://voices.nmfs.noaa.gov/sites/default/files/2018-09/rauch_samuel.pdf (statement by DAARP Rauch that the "[C]ouncil process" is where "policy-level decisions" are made).[3] *Third*, the Council assembled the administrative record and made the policy decisions behind Amendment 54 using the same record NMFS had to use in conducting legality

---

[3] The Government suggests the Court cannot consider DAARP Rauch's candid statements as to how the Council process works because his interview is not part of the standard administrative record prepared by NMFS in this case. Gov. MSJ Br. 15 n.2. But this interview was published on NMFS's own website, and the "Court may take judicial notice of governmental websites." *La Union del Pueblo Entero v. Abbott*, 618 F.Supp.3d 449, 484 n.16 (W.D. Tex. 2022) (citing *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam)).

review.  16 U.S.C. § 1853(a).  *Fourth*, the Secretary would have had the burden of explaining legal

defects in Amendment 54 if she had chosen to remand the matter to the Council.  *Id.* § 1854(a)(3).

Congress has established a process for issuing fishery regulations in which, ordinarily, both

the Council *and* the Secretary must make important decisions.  As NFMS explained in the Final Rule,

"NMFS *and* the Council manage the Gulf reef fish fishery, which includes greater amberjack."  88

Fed. Reg. 39193, 39193 (June 15, 2023) (emphasis added).  Plaintiffs' injuries are "fairly traceable" to

both essential actors behind Amendment 54, *Collins*, 141 S. Ct. at 1779, and they accordingly have

standing to challenge the decisions of both.

### C.   DAARP Rauch also caused Plaintiffs' injuries.

The Government also contends that DAARP Rauch did not cause Plaintiffs' injuries.  Gov.

MSJ Br. 14-18.  The Government's basis for this argument is its belief that DAARP Rauch performed

only a "ministerial" act in publishing and signing Amendment 54.  *Id.*  This argument is wrong.

To start, the Government again tries to import the merits into the standing analysis.  Plaintiffs

have not only alleged that DAARP Rauch signed and published the rule.  They also contend that he

played the primary role within NMFS in approving Amendment 54—consistent with his job

description and public statements.  *See* ECF No. 1, Pls' Compl. ¶ 123.  For purposes of standing, the

Court must assume Plaintiffs' merits contentions are correct.  *See Texas v. EEOC*, 933 F.3d at 447.

But even if the Government were correct that DAARP Rauch *only* signed and published

Amendment 54, that is enough to establish causation.  All agree that DAARP Rauch could sign and

publish Amendment 54.  *See* Gov. MSJ Br. 17.[4]  And all agree that he took those actions.  Amendment

---

[4] Indeed, *only* DAARP could sign and publish Amendment 54 because NOAA's written policy
authorizes *only* DAARP Rauch to do so.  *See* ECF No. 14-12.  Until that written policy is revoked, the agency
is bound by it.  *See, e.g.*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); Brian D. Feinstein &
Jennifer Nou, *Submerged Independent Agencies*, 171 U. PA. L. REV. 945, 962-65 (2023) (discussing *Aacardi* principle
and agency subdelegations similar to that in this case).

54 would not have gone into effect and injured Plaintiffs but for Mr. Rauch's adoption of it.  Because "Article III requires no more than *de facto* causality," *Dep't of Comm.*, 139 S. Ct. at 2566 (internal quotations omitted), the Court should conclude that DAARP Rauch partially caused Plaintiffs' injuries.

### D.    This Court can redress Plaintiffs' injuries.

Finally, Defendants argue this Court cannot redress Plaintiffs' injuries.  *See* Gov. MSJ Br. 13-14.  That is wrong.  When a party "challenging the legality of government action … is himself an object of the action[,] there is ordinarily little question" that a "judgment preventing" the action will redress his harm.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992).

So too here.  The most straightforward way for the Court to redress Plaintiffs' injuries is to give the standard remedy for an Appointments Clause violation: vacatur of Amendment 54 and its attendant final rule.[5]  *Lucia*, 138 S. Ct. at 2055; *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1342 (D.C. Cir. 2012).  That remedy would allow Plaintiffs to resume fishing for amberjack under last year's catch limits.  As detailed in the attached supplemental declarations, Plaintiffs "would have likely been able to fish for amberjack for the remainder of 2023" under last year's catch limits. *See* Ex. A, Bradley Supp. Decl. ¶ 7-9; Ex. B, Arnesen Supp. Decl. ¶ 7-9.  Indeed, in 2022, "when the pre-Amendment 54 catch limits were in effect, "the amberjack fishery was not closed due to the catch limits." Ex. A, Bradley Supp. Decl. ¶ 8; Ex. B, Arnesen Supp. Decl. ¶ 8.  Amendment 54 has thus already cost Ryan and George months of amberjack income—economic injury that will never be remedied.  *See* Ex. A, Bradley Supp. Decl. ¶ 10; Ex. B, Arnesen Supp. Decl. ¶ 10.  But vacatur would

---

[5] The Government says that "nothing at all would change for Plaintiffs" if the Court vacated Amendment 54, suggesting the Secretary's final rule would still harm them.  Gov. MSJ Br. 7 n.1.  But as NMFS explained in the final rule, the final rule merely "implements the FMP" developed by the Council.  88 Fed. Reg. at 39193.  And the Secretary's power to issue that final rule depended on the Council submitting Amendment 54.  16 U.S.C. § 1854(a).  Because there can be no final rule without Amendment 54, vacating Amendment 54 would require vacating the final rule.

allow them to at least fish for the remainder of the year, thus redressing all impending injuries. *See* Ex. A, Bradley Supp. Decl. ¶ 11-12; Ex. B, Arnesen Supp. Decl. ¶ 11-12.

The Government's contrary argument is baffling. It argues that "procedural irregularities at the Council level will not justify invalidating [NMFS's] regulations," suggesting the Court cannot vacate Amendment 54 and its final rule *even if* the Council lacked authority to issue it. Gov. MSJ Br. 14. But none of the cases cited by the Government come close to substantiating this proposition because none involved constitutional challenges to the Council's baseline authority to wield federal power. *Alaska Factory Trawler Ass'n v. Baldridge*, for example, involved allegations of "closed mealtime gatherings" by the Council, a defective notice to the public of a Council meeting, and alleged contact "of the Governor of Alaska with the chairman of the Council." 831 F.2d 1456, 1466 (9th Cir. 1987). The court concluded that none of those actions affected "the Secretary's [legal review on the application of the Act's] National Standards." *Id.* Similarly, *Trawler Diane Marie, Inc. v. Brown* dealt with an allegation that the Council gave improper notice to the public of one of its meetings. 918 F.Supp. 921, 927-28 (E.D. N.C. 1995). These cases are not at all analogous to this one and certainly do not justify deviating from standard redressability rules.

## II.     Plaintiffs can sue the Council and its Members.

Next, the Government contends Plaintiffs cannot sue the Council and its Members under the APA because the Council is not an "agency." Gov. MSJ Br. 18-20. This argument is both incorrect and irrelevant.

To start, the Council is an agency. The APA defines "agency" to mean "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." 5 U.S.C. § 701(b)(1). Because the "Fifth Circuit has not yet had the opportunity to provide guidance on the proper application of this definition," the Southern District of Mississippi has previously looked to D.C. Circuit precedent. *Harrison Cnty. v. Miss. River Comm'n.*, No. 19cv986, 2021 WL

4164679, at * 4 (S.D. Miss. Sept. 13, 2021). And the D.C. Circuit has held the APA "confers agency status on any administrative unit with substantial independent authority in the exercise of specific functions." *Soucie*, 448 F.2d at 1073.

The Council amply satisfies that test. Although NMFS reviews certain aspects of the Council's work, the Council also exercises substantial independent "authority over the fisheries in the Gulf of Mexico." *Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Serv.*, 968 F.3d 454, 458 (5th Cir. 2020) (quoting 16 U.S.C. § 1852(a)(1)(E)). Plaintiffs have repeatedly explained how this is so and thus repeat only a few points here. With respect to fishery management plans, the Council independently assembles the factual record by relying on advisory committees that report only to it. 16 U.S.C. §§ 1853(a), 1852(g). The Council independently decides whether to permit the Secretary to repeal a fishery management plan, *id.* § 1854(h); whether to allow the Secretary to adopt a "limited access system" for a fishery, *id.* § 1854(c)(3); and whether to force the Secretary to adopt emergency regulations, *id.* §§ 1855(c)(2)(A). Beyond fishery management plans, the Council has full discretion to adopt "multi-year research priorities," *id.* § 1852(h)(5), (7), supervise its advisory committees, *Id.* § 1852(g), create new advisory committees, *Id.* § 1852(g)(2), and "conduct any other activities . . . which are necessary and appropriate" to execute its various powers. *Id.* § 1852(g)(9). These are all "final decisions" not reviewable by NMFS—demonstrating that the Council is an agency under the APA. *Soucie*, 448 F.2d at 1074 & n.20; *cf. Grumman Aircraft Eng'g Corp. v. Renegotiation Bd.*, 482 F.2d 710, 715 & n.20 (D.C. Cir. 1973) (noting entities found to be agencies were "empowered to make final decisions not even reviewable by [another agency]").

The Government's only answer is an *ipse dixit* assertion bolstered by three district court citations and an uncontested concession in a Third Circuit decision. *See* Gov. MSJ 18-19. The only cases they cite offering more than a couple sentences on this question are district court decisions in *J.H. Miles & Co.* and *Flaherty*. *J.H. Miles & Co.* acknowledged the question was "a close one,"

incorrectly asserted that NMFS has "the power to alter the recommendations of the [] Council," and failed to mention most of the Council's independent authorities—including its ability to block repeals of fishery management plans. *J.H. Miles & Co., Inc., v. Brown*, 910 F.Supp. 1138, 1159 (E.D. Va. 1995). *Flaherty* acknowledged the Councils' "veto power" and conceded it shows "the Council wields a degree of regulatory authority." *Flaherty v. Ross*, 373 F.Supp.3d 97, 109 (D.D.C. 2019). But that court also ignored many of the Council's independent authorities and mistakenly asserted the Council was "powerless[] . . . to take any binding *affirmative* action." *Compare id.* at 106-110, *with*, *e.g.*, 16 U.S.C. § 1855(c)(2)(A) (granting Council the power to force the Secretary to "promulgate emergency regulations"); *id.* § 1854(a)(3)(C) (noting Council plans "shall take effect as if approved" if NMFS fails to act within 30 days). These mischaracterizations of the Act eliminate whatever persuasive value those non-binding opinions might otherwise have.

That said, it makes no difference whether the Council is an agency under the APA for at least three reasons. *First,* if the Council is not an *independent* agency, then it must be *part of* NMFS, which means Council Members are NFMS officials given independence within NMFS by Congress. *Cf.* ATTORNEY GENERAL'S GENERAL MANUAL ON THE APA 9 n.1 (1947) (APA permits suit against "any officer or board, whether within another agency or not . . . because the real authorities may be some subordinate or semidependent person or persons within [an agency]"). This would make Council Members analogous to the ALJs within the SEC previously considered by the Supreme Court. *See Lucia*, 138 S. Ct. at 2049-50 (discussing place of ALJs within SEC). Just as the plaintiffs in *Lucia* could challenge the constitutionality of appointments *within* the SEC, Plaintiffs can challenge the constitutionality of Council Members if they are deemed to be within NMFS.

*Second*, Plaintiffs are not suing only under the APA. Plaintiffs are also suing under the well-established equitable cause of action to enjoin unlawful actions by federal officials. *See* ECF No. 16,

Pls.' PI Rebuttal Br. 3-6; *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010). The Government's purported APA limitations do not apply to *that* cause of action.

*Third*, the Court need not decide this issue because one of Plaintiffs' standing and merits theories does not depend on an ability to sue the Council and its Members. *See supra* at 4-5. Plaintiffs challenge NMFS's erroneous failure to disapprove Amendment 54 on the ground that it was the product of unlawfully appointed officers. That standing and merits theory is correct, and adopting it dispenses with any need to decide whether the Council and its Members are necessary defendants.[6]

### III.   Council Members are Officers of the United States.

The Government does not meaningfully dispute that, if Council Members are officers, the Act violates the Appointment Clause and Article II's removal restrictions. Instead, it repeats its prior threshold arguments on officer status. Those arguments remain mistaken.

*First*, the Government renews its prior contention that Council Members do not hold continuing positions established by law. *See* Gov. MSJ Br. at 21-23. Plaintiffs have already answered the Government's points and respectfully refer the Court to their prior briefs. *See* ECF No. 16, Pls.' PI Rebuttal Br. 11-12; ECF No. 7, Pls.' PI Br. 10.

*Second*, the Government repeats its prior arguments that Council Members do not wield "significant authority." Gov. MSJ Br. at 23. As it did before, the Government employs misdirection by emphasizing NMFS's responsibilities and largely ignoring the Council's substantial-and-independent powers. *See* Gov. MSJ Br. 23-27.

---

[6] For the same reasons, the Court need not consider the Government's argument—in a single paragraph—that the Council's actions in promulgating Amendment 54 are not final agency actions under the APA. *See* Gov. MSJ Br. 19-20. First, this argument does not purport to rebut Plaintiffs' non-APA cause of action: their equitable cause of action under the Constitution to seek an injunction against unlawful agency action. *See* ECF No. 16, Pls.' PI Rebuttal Br. 3-6. Second, Plaintiffs are challenging the failure of *NMFS* to disapprove Amendment 54 because it was the product of an unlawfully appointed Council. *See supra* at 4-5. But if the Court does consider this argument, the Government is wrong. Were it otherwise, the Supreme Court would not have allowed the plaintiffs in *Lucia* to challenge decisions by the SEC's ALJs, which became final only *after* the SEC affirmatively declined to review them. *Lucia*, 138 S. Ct. at 2052 n.4.

On the NMFS side of the equation, the Government overstates the Secretary's power in several ways. *First*, the Government suggests that only the Secretary can prepare implementing regulations for Council plans. Gov. MSJ Br. 23-24. But the Council can prepare its own regulations. 16 U.S.C. § 1853(c). And the Secretary *must* issue those Council-prepared regulations if they are legal and can revise them only if she first "consult[s] with the Council before making any revision[s]." *Id.* § 1854(b)(2), (3). At least once, NMFS has been forced to implement Council regulations it opposed because it could not "compel the independent . . . Council to place [that] item on the agenda." *Oceana, Inc. v. Ross*, No. 17-cv-05146, Dkt. No. 124, at 8-9 (C.D. Cal. Nov. 18, 2019); *see* 85 Fed. Reg. 7246, 7247 (Feb. 7, 2020) (NMFS issuing regulation that it wished to alter because the Council would not consult). *Second*, the Government suggests that the Secretary necessarily has the final word on all fishing regulations. Gov. MSJ Br. 24. As discussed, a fishery management plan or amendment "shall take effect" if the Secretary fails to act on it within 30 days. 16 U.S.C. § 1854(a)(3)(C). The Executive Branch does not have the power to unilaterally excise this provision from the Act and the Court must grapple with it in assessing Plaintiffs' claims. *Third*, the Government suggests the Secretary can prepare a fishery management plan "without the input of a Regional Fishery Management Council" if "the Secretary disapproves of [a] Plan submitted" by the Council. Gov. MSJ Br. 24. That is clearly wrong. If the Secretary disapproves a Council's plan, she *must* remand to the Council, 16 U.S.C. § 1854(a)(3), and the Secretary *remains powerless* to act unless "the Council involved fails to submit a revised or further revised plan or amendment." *Id.* § 1854(c)(B). *Fourth*, while the Government is correct that the Secretary can promulgate temporary emergency regulations, it again ignores the Council's *own* power to *force* the Secretary to adopt emergency regulations. *Id.* § 1855(c)(2)(A). *Finally*, the Government emphasizes that the Secretary can veto Council plans or amendments based on a wide variety of laws. Gov. MSJ Br. 25-27. But the number of *legal* bases to reject a Council proposal does not negate the Secretary's *obligation* to implement *lawful* Council policies or the Secretary's *lack* of independent policy

discretion.  16 U.S.C. § 1854(a)(3).  Just as federal judges do not engage in policymaking when conducting judicial review under open-ended legal standards, *see, e.g.*, *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 46-47 (1983) (outlining judicial arbitrary-and-capricious review), the Secretary's legal review is manifestly not plenary policy review.

Ultimately, though, the Government's overstatements about the Secretary's powers are beside the point.  Plaintiffs agree that the Secretary wields significant authority.

But on the Council's side of the equation, there is no denying that the Council also plays an *essential* and *important* role in making fishing regulations.  *Contra* Gov. MSJ Br. 25 (suggesting that the Secretary's authority "demonstrates that the Council does not wield 'significant authority'").  To repeat, the Council (1) decides which fish species to regulate, 16 U.S.C. §§ 1852(h)(1), 1853 (a)(1)(A); (2) initiates the rulemaking process, *id.* §§ 1854(a)(1), (b)(1), (c)(1)(A); (3) creates and supervises the advisory committees that study fish populations, *id.* § 1852(g); (4) assembles the record to justify fishing regulations, *id.* § 1853(a); (5) authors fishing policies and implementing regulations, *id.* §§ 1853(c), 1854(a)(1), (b)(1); and (6) has the final word on *lawful* policies and regulations, *id.* § 1854(a)(3), (b)(3) (instructing that Secretary "shall" issue lawful Council policies).

Beyond that, as in its prior brief, the Government largely ignores the Council's other significant powers.  The Government ignores altogether the Council's power to force the Secretary to promulgate emergency regulations.  *Id.* § 1855(c)(2)(A).  It also ignores the Council's unchecked ability to bar the Secretary from adopting a "limited access system" or a "limited access privilege program" for a fishery "under the authority of a Council," *id.* § 1854(c)(3), despite that provision being specifically discussed at the August 4 hearing, Hearing Trans. 45-46.[7]  As for the Council's ability to

---

[7] A "limited access system" "means a system that limits participation in a fishery to those satisfying certain eligibility criteria." 16 U.S.C. § 1802(27).  A "limited access privilege program" is one in which fishermen gain "a Federal permit . . . to harvest a quantity of fish . . . of the total allowable catch of the fishery."  *Id.* § 1802(26).

block the Secretary from repealing a fishery management plan, the Government contends without citation that this provision binds only the Council. Gov. MSJ Br. 42 ("1854(h) limits the ability of the Council to repeal or revoke its own FMP by a three-quarters majority."). That is clearly wrong. The provision says: "*The Secretary* may repeal or revoke a fishery management plan for a fishery under the authority of a Council *only if*" three fourths of the Council agree. 16 U.S.C. § 1854(h) (emphases added). The Executive Branch, again, lacks the authority to unilaterally revise the statute to suit its litigation needs.

The Government invokes the Horseracing Authority, Gov. MSJ Br. 27-28, but that agency only *reinforces* the implausibility of characterizing the Council as playing a purely advisory role. The Horseracing Authority proposes rules to the Federal Trade Commission, but the FTC has the power to "abrogate, add to, and modify [binding] rules." *Oklahoma v. United States*, 62 F.4th 221, 225 (6th Cir. 2023). In *Oklahoma*, which rejected a private nondelegation challenge to the Horseracing Authority, the Sixth Circuit emphasized that the FTC could "modify [all Authority] rules if it wishes." *Id.* at 230 (internal quotation marks omitted). Here, by contrast, the Secretary can only block *unlawful* Council policies. She cannot "modify *any* [Council] rules for any reason at all, *including policy disagreements*." *Id.* at 231 (emphases added). She cannot "abrogate, add to, [or] modify" any of the Council's lawful policies. *See* 16 U.S.C. §§ 1853(a); 1854(c)(1). If the Secretary identifies a *legal* basis for rejecting the Council's work, she cannot just ignore the Council's proposal and implement her own policy—as the FTC *can do* with the Horseracing Authority. *Cf. Oklahoma*, 62 F.4th at 230. The Secretary can only remand the matter to the Council with *recommended* changes that the Council remains free to reject. *See* 16 U.S.C. § 1854(a)(3). Further, the Horseracing Authority has no authority to block the revocation of regulations by the FTC, force the FTC to issue emergency regulations, or permanently block the FTC from adopting a particular type of regulation. *Cf. supra* at 17-18.

17

Struggling to erase the Act's clear delegation of important powers to the Council, the Government retreats to presidential signing statements that promise to construe the Act narrowly and the canon of constitutional avoidance. *See* Gov. MSJ Br. 28. As discussed in a prior brief, the fact that several Administrations have recognized the constitutional problems with the Act does not help the Government's case. *See* ECF No. 16, Pls.' Rebuttal Br. 14. In any event, neither presidential signing statements nor this Court can "rewrite [the] statute." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018). And constitutional avoidance is relevant only if the Government proposes an alternative statutory reading that is "plausible." *Id.* at 842. And here, the Government does not explain how this Court can adopt its strained view of the Act without revising and deleting entire statutory sections to eliminate the Council's various independent powers. Adopting its view would require, for example, the Court to delete the provision allowing the Council to force the Secretary to issue emergency regulations, 16 U.S.C. § 1855(c)(2)(a), and the provision permitting the Council to bar the Secretary from adopting a "limited access system." *Id.* § 1854(c)(3).

## IV. DAARP Rauch is an Officer of the United States.

DAARP Rauch also serves unlawfully because he is unconstitutionally insulated from removal. The Government does not defend DAARP Rauch's removal protections on the merits, but instead alleges that Plaintiffs forfeited this claim and that DAARP Rauch lacks significant authority. *See* Gov. MSJ Br. 32-34. Both contentions fail.

*First*, Plaintiffs did not forfeit their removal claim against DAARP Rauch. At the heart of Plaintiffs' argument is that Mr. Rauch unlawfully exercised Article II executive power by signing and publishing Amendment 54 in his own name. *See* ECF No. 16, Pls.' PI Rebuttal Br. 15. The Government says Plaintiffs needed to make that argument when commenting on the proposed rule. *See* Gov. MSJ Br. 33. But Plaintiffs had to comment *before* DAARP Rauch signed the final rule. The

Government's forfeiture argument would require plaintiffs to not only predict the future, but further predict that the Executive Branch would engage in an unconstitutional act.

Even if Plaintiffs could have foreseen Mr. Rauch's unlawful promulgation of the final rule, though, they did not need to preemptively preserve their objection.  The Supreme Court has repeatedly made clear that parties generally need not preserve a constitutional challenge to agency authority before the agency.  *See, e.g.*, *Carr v. Saul*, 141 S. Ct. 1352, 1356, 1360-61 (2021) (holding petitioners did not need to make Appointments Clause challenges before ALJs they were challenging); *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); *see also Mobility Workx, LLC v. Unified Patents, LLC*, 15 F.4th 1146, 1151 (Fed. Cir. 2021) ("[C]onstitutional challenges to the statute under which the agency operates need not be raised before the agency.").  After all, Mr. Rauch could not have disavowed his own unconstitutional tenure protections had that objection been presented to him.  *See Carr*, 141 S. Ct. at 1361 ("It makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested."); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994) (noting agencies cannot adjudicate constitutionality of statutes).[8]

The Government's contrary argument rests upon faulty citations.  In *Lucia*, the Court did *not* say that the plaintiff would not receive a remedy if he did not make a "timely challenge" to "the validity of [the ALJ's] appointment before the Commission."  138 S. Ct. at 2055.  The Court merely made a *factual* observation that Lucia *did* make that challenge; it said or implied nothing about what would have happened if he had not done so.  And the Federal Circuit has construed its decision in *In re DBC* very narrowly based on specific facts present in that case. 545 F.3d 1373 (Fed. Cir. 2008).  *Arthrex, Inc. v. Smith & Nephew*, 941 F.3d 1320, 1327 (Fed. Cir. 2019), *vacated on other grounds* 141 S. Ct. 1970 (2021).

---

[8] If the Court concludes Plaintiffs should have objected to Mr. Rauch's promulgation of Amendment 54 before it happened, Plaintiffs respectfully ask the Court to exercise its discretion to nonetheless consider the argument.  *See Freytag v. Comm'r*, 501 U.S. 868, 878 (1991) (considering argument challenging Special Trial Judge's authority even though "petitioners gave their consent to trial before the Special Trial Judge").

And *Nat'l Wildlife Fed'n v. EPA* dealt with a substantive objection to a regulation—not a constitutional challenge.  286 F.3d 554, 561-62 (D.C. Cir. 2002).

*Second*, the Government restates its prior argument that DAARP Rauch does not exercise significant authority.  *See* Gov. MSJ Br. 33-34.  Because the Government adds nothing new to this argument, Plaintiffs respectfully refer the Court to their prior briefing on this issue.  *See* ECF No. 16, Pls.' PI Rebuttal Br. 15; ECF No. 7, Pls.' PI Br. 27-30.

## V.       The Court should grant the relief requested in Plaintiffs' Complaint.

The Court should grant all the relief requested in Plaintiffs' complaint.  Vacatur of Amendment 54 and its corresponding final rule is necessary to permit Plaintiffs to fish this year.  *See* ECF No. 1, Pls. Compl. ¶ 136.  Declaratory relief and an injunction against the Council issuing new amberjack catch limits protects Plaintiffs during the next fishing season.  *Id.*  Plaintiffs have already explained why these requests comply with precedent and traditional remedial principles.  *Id.* at ¶¶ 147-48, 153-55, 160-61; ECF No. 7, Pls.' PI Br. 18, 22-24.

For a second time, the Government has refused to engage with Plaintiffs' remedial arguments and instead asks for supplemental briefing.  *See* Gov. MSJ Br. 34 n. 6; ECF No. 15, Gov. PI Br. 47 n.9.  This is an inappropriate request.  This second request comes *after* Plaintiffs opposed the Government's prior request for supplemental briefing on remedies.  *See* ECF No. 16, Pls' Rebuttal Br. 2 n.1.  It also comes *after* the Court expressed interest in any remedial arguments the Government had during the August 4 hearing.  *See* Hearing Trans. 101.  The Government could have chosen to address Plaintiffs' prior remedial arguments and presented any arguments it might have in this briefing.  But it did not, and any such arguments are now forfeited—as is the Government's entitlement to file dozens more pages on these now-familiar issues with the Court.

To the extent the Government is asking this to Court "sever" the provisions of the Act addressing the Council, Gov. MSJ Br. 34 n.6, that request is baseless.  As Plaintiffs have explained,

the standard remedy for an Appointments Clause violation is vacatur of the regulation at issue.  *See* ECF No. 1, Pls.' Compl. ¶ 144.  In any event, as Plaintiffs have also previously argued, it would take an unprecedented amount of statutory editing to cut the myriad constitutional defects in the Act.  *See* ECF No. 7, Pls.' PI Br. 22-24; *see also id.* at 18.   Further, there is compelling evidence Congress would not have adopted the Act but for the Council's powers and the promise that the Council would protect state interests against the federal government.  *See id.* at 23-24.  Rather than rewrite the Act, the Court should issue the standard remedy for an Appointments Clause violation: vacatur of Amendment 54 and its attendant final rule.  *Lucia*, 138 S. Ct. at 2055; *Intercollegiate Broad. Sys.*, 684 F.3d at 1342.[9]

## **CONCLUSION**

Plaintiffs agree with the Government that, under the Appointments Clause, the public must be able to "determine on whom the blame or punishment of a pernicious measure . . . ought really to fall."  Gov. MSJ Br. 34 (quoting *Free Enter. Fund*, 561 U.S. at 498)).  By delegating substantial powers to create, preserve, and block fishing regulations to the unlawfully appointed and tenured Council, the Act frustrates the "central aim of the Appointments Clause" by interfering with the public's ability to hold the President accountable for federal fishery policy.  *Id.*  The Court should deny the Government's motion for summary judgment, grant Plaintiffs' motion for summary judgment, and promptly grant relief so that George Arnesen and Ryan Bradley can resume fishing for amberjack under last year's catch limits

---

[9] The Government is also mistaken in its conclusory suggestion that it can ratify DAARP Rauch's unlawful actions.  *See* Gov. MSJ Br. 34 n.6.  "[I]t is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made."  *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994) (emphasis omitted).  At the time DAARP Rauch signed and published Amendment 54, only he had the authority to do so.  *See* Gov. MSJ Br. 17.  Therefore, neither Assistant Administrator Coit nor any other government had that authority and could not "do the act ratified at the time the act was done."  *NRA Political Victory Fund*, 513 U.S. at 98.

Dated:  September 11, 2023                    Respectfully submitted,

*/s/ Robert W. Wilkinson*
Robert W. Wilkinson (MS Bar No. 7215)
A. Kelly Sessoms, III (MS Bar No. 9466)
Wilkinson, Williams, Bosio & Sessoms, PLLC
734 Delmas Ave. (39567)
P.O. Box 1618
Pascagoula, MS 39568-1618
(228) 762-2272 phone
(228) 762-3223 fax
rwilkinson@wwbslaw.com
ksessoms@wwbslaw.com

Brett Shumate*
John Henry Thompson*
Louis J. Capozzi III*
JONES DAY
51 Louisiana Avenue N.W.
Washington, DC 20001
(202) 879-5429
bshumate@jonesday.com

James M. Burnham*
King Street Legal, P.L.L.C.
800 Connecticut Avenue NW, Suite 300
Washington, DC 20006
(602) 501-5469
james@kingstlegal.com

*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*