IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

GEORGE D. ARNESEN; JEFFREY RYAN BRADLEY; KAREN BELL; A.P. BELL FISH COMPANY, INC.; *and* WILLIAM COPELAND

v.

HOWARD LUTNICK, *U.S. Secretary of Commerce*; NATIONAL MARINE FISHERIES SERVICE, *(NMFS)*; JANET COIT, *NMFS Assistant Administrator*; SAMUEL D. RAUCH, III, *NMFS Deputy Assistant Administrator for Regulatory Programs*; GULF OF MEXICO FISHERY MANAGEMENT COUNCIL; *et al.*

PLAINTIFFS

CIVIL ACTION NO. 1:23-cv-145-TBM-RPM
*consolidated with*
CIVIL ACTION NO. 1:23-cv-160-TBM-RPM

DEFENDANTS

## MEMORANDUM OPINION AND ORDER

The Plaintiffs are commercial fishers who challenged the constitutionality of the Gulf of Mexico Fishery Management Council, established under the Magnuson-Stevens Act. The Plaintiffs argued that because some of the Council members were serving in violation of the Appointments Clause, the Council's passage, and the Secretary's subsequent promulgation of the Final Rule implementing Amendment 54—which significantly reduced the greater amberjack catch limits—was void. On January 31, 2024, this Court expedited a decision, becoming the first court to find the Council members were officers, but nonetheless denied the requests for declaratory and injunctive relief. This is because although six of the Council's seventeen members were improperly appointed as inferior officers, the remaining eleven members were properly appointed and constituted a quorum of the Council. And since the Secretary, through her designee,

ultimately reviewed, approved, and implemented Amendment 54 through the Final Rule (after notice and comment), the composition of the Council was not the proximate cause of the Plaintiffs' injuries. For these reasons, this Court found the Final Rule adopting Amendment 54 was not void.

The Plaintiffs appealed and the Fifth Circuit remanded for this Court to consider two legal questions. First, whether "there is jurisdiction to consider Arnesen's requested relief declaring Amendment 54 itself void and enjoining the voting members of the Council from developing further annual catch limits for the greater amberjack fishery . . ." [94], p. 4. Second, "whether the [National Marine Fisheries Service] Assistant Administrator's review and approval of the Final Rule functioned as a ratification of the Council's actions." *Id.*

On remand, this Court finds that there is jurisdiction to consider the Arnesen Plaintiffs' claims for declaratory and injunctive relief against the Council. The Arnesen Plaintiffs assert an equitable right of action under the constitution for which sovereign immunity presents no bar. But even if an explicit waiver of sovereign immunity were required, the Arnesen Plaintiffs' claims fall within the waiver found in Section 702 of the Administrative Procedure Act. As a result, this Court has jurisdiction. This Court also finds that the Assistant Administrator's implementation of the Final Rule adopting Amendment 54 did not ratify the Council's actions because the Assistant Administrator, Janet Coit, did not have the authority to develop her own amendment or regulation at the time the Final Rule was promulgated. Instead, under the Magnuson-Stevens Act, Coit had the authority to approve, partially approve, or disapprove Amendment 54 and send it back to the Council for reconsideration. And she chose to approve it after notice and comment. This is sufficient to cut off causation. But it is not a ratification. Having fully considered the issues

identified on remand, this matter will be transferred back to the Fifth Circuit for further proceedings.

## I. PROCEDURAL HISTORY

The Arnesen Plaintiffs filed suit in this Court on June 16, 2023, and the Bell Plaintiffs filed their suit two weeks later on June 30, 2023. The two actions were consolidated August 9, 2023. After extensive briefing and a hearing, this Court expedited a decision and denied the Plaintiffs' requested relief and dismissed this action on January 31, 2024.[1] The Plaintiffs appealed and oral argument was heard on June 24, 2024. The Fifth Circuit remanded two narrow issues for this Court's consideration on August 23, 2024, and placed the appeal in abeyance. The Fifth Circuit instructed this Court to analyze both jurisdiction and ratification, stating that the latter of which may be informed by the Fifth Circuit's decision in *Braidwood Management, Incorporated v. Becerra*, 104 F.4th 930 (5th Cir. 2024), handed down on June 21, 2024.

Upon remand, the parties proposed a specific briefing schedule and briefing concluded in November of 2024.[2] In January of 2025, the Supreme Court granted certiorari in *Braidwood*. Oral argument in *Braidwood* was heard on April 21, 2025. This Court has also agreed that this matter should be expedited. While this Court's criminal, motion, and trial docket has impeded the

---

[1] This Court's prior discussion of the facts and history of this case were discussed at length in its prior Opinion [87] and are incorporated here by reference. For purposes of this opinion, the Court focuses only on the facts necessary to answer the issues on remand.

[2] On September 25, 2024, before supplemental briefing concluded, the Third Circuit handed down its opinion in a similar case, *Lofstad v. Raimondo*, 117 F.4th 493, 499 (3rd Cir. 2024) The Third Circuit found that the fishermen had standing to assert an Appointments Clause claim and that the council members were principal officers of the United States. As a result, the Third Circuit found that the appropriate remedy was to sever the council's "pocket veto" authority from the remaining provisions of the Magnuson-Stevens Act. On February 21, 2025, the Government declined to file a petition for certiorari in that case.

issuance of an opinion as hastily as this Court certainly desired; this case has remained a priority throughout.

## II. ISSUE ONE: JURISDICTION

On appeal, the Government argued that sovereign immunity requires dismissal of the Arnesen Plaintiffs' claims against Amendment 54 and the Council. As a result, the Fifth Circuit instructed this Court on remand to determine whether "there is jurisdiction to consider Arnesen's requested relief declaring Amendment 54 itself void and enjoining the voting members of the Council from developing further annual catch limits for the greater amberjack fishery." [94], p. 4. The Court finds that there is. The Arnesen Plaintiffs may assert an equitable cause of action against the Council under the constitution for which sovereign immunity presents no bar. Even if a specific waiver of sovereign immunity were required, however, the Arnesen Plaintiffs' claims against the Council fall under the waiver found within Section 702 of the Administrative Procedure Act.

"The doctrine of 'sovereign immunity' holds that a government may not be sued without its consent—i.e., one cannot use one part of the government—the courts—to compel other parts of the government without permission of the government." 33 Fed. Prac. & Proc. Judicial Review § 8351 Overview of Sovereign Immunity (2d ed. 2025). Accordingly, federal courts have jurisdiction over lawsuits against the United States only to the extent that sovereign immunity has been waived. *Charles v. McHugh*, 613 F. App'x 330, 332 (5th Cir. 2015) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994)).

The Arnesen Plaintiffs argue that their claims against the Council are not barred by sovereign immunity under the *Larson-Dugan* exception. Under this exception to the general rule of federal sovereign immunity, "suits for specific relief against officers of the sovereign" allegedly

acting "beyond statutory authority or unconstitutionally" are not barred by sovereign immunity. *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689, 693, 69 S. Ct. 1457, 93 L. Ed. 1628 (1949); *Dugan v. Rank*, 372 U.S. 609, 621-22, 83 S. Ct. 999, 10 L. Ed. 2d 15 (1963) (identifying the "recognized exceptions" as "(1) action by officers beyond their statutory powers and (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void."). "The exception is based on the principle that such *ultra vires* action by a federal officer 'is beyond the officer's powers and is, therefore, not the conduct of the sovereign.'" *Pollack v. Hogan*, 703 F.3d 117, 120 (D. D.C. 2012) (quoting *Larson*, 337 U.S. at 690, 69); *see also Petterway v. Veterans Admin. Hosp., Houston, Tex.*, 495 F.2d 1223, 1225 (5th Cir. 1974).

This Court agrees that the Arnesen Plaintiffs' claims for declaratory and injunctive relief against the Council fall within the *Larson-Dugan* exception. *See Strickland v. United States*, 32 F.4th 311, 363 (4th Cir. 2022) (explaining claims for declaratory and injunctive relief are considered "nonstatutory review claims" within the *Larson-Dugan* exception). To be sure, this Court previously found the Council Members to be inferior officers. [87], p. 29. And the Arnesen Plaintiffs allege that the Council members were unconstitutionally appointed, and that the adoption of Amendment 54 was *ultra vires* to their statutory and constitutional authority. *See Pollack*, 703 F.3d at 120; [100], p. 3. Thus, "sovereign immunity presents no obstacle to [the Arnesen Plaintiffs'] claims for non-monetary relief." *Clark v. Libr. of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984); *see also White v. Franklin*, 637 F. Supp. 601, 612 n.8 (N.D. Miss. 1986) ("Sovereign immunity does not bar suits for specific, non-monetary relief against government officers sued in their official capacities where the challenged actions of the officials are allegedly unconstitutional or beyond the official's statutory authority.").

Because sovereign immunity presents no bar to their claims against the Council, the Arnesen Plaintiffs claim that they may bring an equitable cause of action "directly under the Constitution to challenge governmental action under the Appointments Clause [and] separation-of-powers principles." [97], pps. 7-8. It is well-settled that an "individual, in a proper case, can assert injury from governmental action taken in excess of the authority that federalism defines." *Bond v. United States*, 564 U.S. 211, 220, 131 S. Ct. 2355, 180 L. Ed. 2d 269 (2011). Indeed, the Supreme Court has long recognized a right of action to challenge unconstitutional governmental action. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001) (equitable relief "has long been recognized as the proper means for preventing entities from acting unconstitutionally"); *Bell v. Hood*, 327 U.S. 678, 684, 66 S. Ct. 773, 90 L. Ed. 939 (1946) ("[I]t is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"). This right of action for equitable relief encompasses claims for violations of the Appointments Clause and the separation of powers doctrine. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2, 130 S. Ct. 3138, 177 L. Ed. 2d 706 (2010) (explaining that there is "no reason" why "an Appointments Clause or separation-of-powers claim should be treated differently than every other constitutional claim.").

In fact, in 2021, the Supreme Court recognized that individuals with Article III standing "have an implied private right of action under the Constitution to seek equitable relief to preven[t] entities from acting unconstitutionally." *Collins v. Yellen*, 594 U.S. 220, 1791 n.1, 141 S. Ct. 1761, 210 L. Ed. 2d 432 (2021) (internal quotations and citation omitted); *see also Clark*, 750 F.2d at 102 ("It is well-established that sovereign immunity does not bar suits for specific relief against

government officials where the challenged actions of the officials are alleged to be unconstitutional or beyond statutory authority.") (citing *Dugan*, 372 U.S. at 621-23).

Having previously found that the Arnesen Plaintiffs have Article III standing to bring these claims, and now in light of the Government's contention on appeal, this Court now further finds that they may bring an equitable right of action against the Council to challenge governmental action under the Appointments Clause and separation of powers principles. *Free Enter. Fund*, 561 U.S. at 491 n.2; *Collins v. Mnuchin*, 938 F.3d 553, 587 (5th Cir. 2019) (reversed in part and vacated in part on other grounds); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327, 135 S. Ct. 1378, 191 L. Ed. 2d 471 (2015) (holding that "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity" and does not rest on an implied right of action). Although the Court could end its analysis here, out of an abundance of caution, the Court will address the waiver of sovereign immunity found in Section 702 of the Administrative Procedure Act.

As relevant here, Congress waived sovereign immunity for claims seeking non-monetary damages under 5 U.S.C. § 702 which states, in relevant part:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that *an agency or an officer or employee thereof* acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

*Id.* (emphasis added).

Though this waiver of sovereign immunity is found in Section 702 of the Administrative Procedure Act, "[t]he sentence waives sovereign immunity for '[a]n action in a court of the United

States seeking relief other than money damages,' not for an action brought under the APA." *Trudeau v. Fed. Trade Com'n*, 456 F.3d 178, 186 (D.C. Cir. 2006); *Texas v. United States Dep't of Homeland Sec.*, 123 F.4th 186, 201 (5th Cir. 2024) (joining every other circuit in construing Section 702's "plain language as a waiver of sovereign immunity for all equitable actions, regardless of whether they arise under the APA or other federal law."); *Gilmore v. Weatherford*, 694 F.3d 1160, 1166 n.1 (10th Cir. 2012) (Gorsuch, J., on panel) (explaining "[w]hether plaintiffs' claims arise under the APA or common law is [ ] immaterial with respect to the sovereign immunity analysis."). In other words, that the Arnesen Plaintiffs do not bring an APA claim is not fatal to their argument.

Because "Congress has waived immunity in all suits—like this one—against 'agenc[ies]' that seek 'relief other than monetary damages,'" the Arnesen Plaintiffs assert that this Court has jurisdiction to consider their claims. [97], pps. 7-8. But for Section 702's waiver of sovereign immunity to apply, the Fifth Circuit has held that there must be some "'agency action,' as that term is defined in § 551(13)." *Doe v. United States*, 853 F.3d 792, 799 (5th Cir. 2017) (quoting *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 489 (5th Cir. 2014)).[3] Though the Council itself is not an agency,[4] the National Marine Fisheries Service is an agency within the Department of Commerce. 5 U.S.C. § 101 (listing the Department of Commerce as an executive department); 5 U.S.C. § 105 (explaining that "'Executive agency' means an Executive department

---

[3] In *Doe*, the Fifth Circuit also recognized that other circuits "have held that the second sentence of § 702 waives sovereign immunity for all actions seeking equitable, nonmonetary relief against an agency, even if there has been no 'agency action' within the meaning of the APA." *Doe*, 853 F.3d at 799 (citing *Trudeau*, 456 F.3d 178; *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989); *see also Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284 (S.D. Cal. 2018) ("Unlike Section 702's judicial review provision, which is textually limited to agency 'action,' Section 702's waiver of sovereign immunity contains no such textual limitation.").

[4] Indeed, this Court is unaware of a single case that has found that to be true. *See Flaherty v. Ross*, 373 F. Supp. 3d 97 (D. D.C. 2019); *Gen. Category Scallop Fishermen v. Sec'y, U.S. Dep't of Com.*, 635 F.3d 106, 112 n.15 (3rd Cir. 2011).

…"); [87], pps. 6-7; The National Marine Fisheries Service (NMFS), 14 J. Energy Nat. Resources & Envtl. L. 395, 397 n.25 (1994) ("The National Marine Fisheries Service is an agency of the Department of Commerce."). Thus, the Council's proposal of Amendment 54, and Coit's ultimate approval thereof, indicates "agency action" as contemplated by Section 702. And since this Court has already found that the Council members are inferior officers, the Court finds in the alternative that the United States has waived its sovereign immunity for the Arnesen Plaintiffs' equitable claims against the Council. *See Bowen v. Massachusetts*, 487 U.S. 879, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988) ("Moreover, while reiterating that Congress intended 'suits for damages' to be barred, both Reports go on to say that 'the time [has] now come to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency *or officer* acting in an official capacity.'") (emphasis added) (citations omitted).[5]

Thus, to answer the first question on remand: this Court has jurisdiction "to consider Arnesen's requested relief declaring Amendment 54 itself void and enjoining the voting members

---

[5] Notably, the Government also argues that the limited waiver of sovereign immunity within Section 1855(f) bars the Arnesen Plaintiffs' equitable claims against the Council. But the Arnesen Plaintiffs do not bring Section 1855(f)(1) or (2) claims against the *Council*, which are the only jurisdictional claims at issue before this Court on remand—and they are not required to do so under the plain language of the statute. To be sure, a plain reading of Section 1855(f) of the Magnuson-Stevens Act does not say that every constitutional claim against a fisheries *council* must be brought under that section. *United States v. Shabazz*, 633 F.3d 342, 345 (5th Cir. 2011) ("When interpreting a statute, we are bound to follow the plain and unambiguous meaning of the statutory language."). Rather, it is clear from the text that the only claims permissible for judicial review under Section 1855(f) are those that involve actions taken by the *Secretary* and "regulations promulgated by the *Secretary*." 16 U.S.C. § 1855(f)(1)-(2) (emphasis added). And "it is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" *Rotkiske v. Klemm*, 589 U.S. 8, 14, 140 S. Ct. 355, 205 L. Ed. 2d 291, (2019) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts, pg. 94 (2012)). To do so "'is not a construction of a statute, but, in effect, an enlargement of it by the court.'" *Id.* (quoting *Nichols v. United States*, 578 U.S. 104, 110, 136 S. Ct. 1113, 1118, 194 L. Ed. 2d 324 (2016)). Thus, based on the text of the statute itself, this Court declines to find that claims against the Council may, much less *must*, be brought under Section 1855(f)(1)-(2). *See Gulf Restoration Network, Inc. v. National Marine Fisheries, Service*, 730 F. Supp. 2d 157, 173 (D. D.C. 2010) (finding that Section 1855(f)(1)-(2) "does not specifically provide for review of [fishery management plans].");  *see also Anglers Conservation Network v. Pritzker*, 70 F. Supp. 3d 427, 437 (D. D.C. 2014) (finding no Section 1855(f) claim because the challenged action was a "non-final decision of the independent Mid-Atlantic Council."). In sum, the limited waiver of sovereign immunity in Section 1855(f) has no effect on the Arnesen Plaintiffs' equitable cause of action arising directly under the constitution.

of the Council from developing further annual catch limits for the greater amberjack fishery." [94], p. 4.

### III. ISSUE TWO: RATIFICATION

The Court now turns to the second issue to be addressed on remand: whether Janet Coit's review and approval of the Final Rule implementing Amendment 54 functioned as a ratification of the Council's actions.[6] [94], p. 4. In general, "[r]atification occurs when a principal sanctions the prior actions of its purported agent." *Wilkes-Barre Hosp. Co., LLC v. Nat'l Lab. Relations Bd.*, 857 F.3d 364, 371 (D.C.C. 2017); Agency Defined, § 1.01, Restatement (Third) Of Agency § 1.01 (2006) ("a person may, through ratification, create the consequences of actual authority with respect to an actor's prior act."). In deciding the ratification issue, this Court will apply "basic principles of agency" law.[7] *Braidwood Mgmt., Incorporated v. Becerra*, 104 F.4th 930 (2024); *Nat'l*

---

[6] The Bell Plaintiffs argue that the Government waived its ratification defense by failing to raise it before now. But it does not appear that there has been such a waiver based on the unique nature of these proceedings—including the expedited litigation before appeal and the issuance of *Braidwood* after this Court's first opinion in this matter. Even still, the Fifth Circuit specifically remanded the ratification issue for this Court's consideration. As such, this Court declines to find that the Government waived their ratification defense. Regardless, the waiver issue is largely moot anyway since the Plaintiffs are prevailing on the lack of any ratification.

[7] "A principal's right to control the agent is a constant across relationships of agency, but the content or specific meaning of the right varies. Thus, a person may be an agent although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment. A principal's failure to exercise the right of control does not eliminate it, nor is it eliminated by physical distance between the agent and principal." Agency Defined, § 1.01, Restatement (Third) Of Agency § 1.01 (2006). But "[t]he requirement that an agent be subject to the principal's control assumes that the principal is capable of providing instructions to the agent *and of terminating the agent's authority*." *Id.* (emphasis added). As discussed below, Coit had no power under the Magnuson-Stevens Act to terminate the Council's authority. Thus, while the relationship between Coit and the Council may "resemble agency in form," their ability to act "is subject to constraints imposed by law or by legal or regulatory institutions." Agency Defined, § 1.01, Restatement (Third) Of Agency § 1.01 (2006) ("[a] statutory designation of the Secretary of State as agent to receive service of process is not a consensual choice of agent on the part of the principal or specification of the agent's powers but follows a choice to carry on activity in a particular state."). And as a result, "the decision to appoint a particular agent or to continue the agency relation is not within the parties' exclusive control." *Id.* (such as a "principal-agency relationship between the owner of a lost item and government officials who recover it . . . [as well as] court-appointed counsel represents the client, notwithstanding the client's objection, and counsel's withdrawal from representation requires the court's assent."). In other words, while Coit can approve, disapprove, or partially approve the Council's proposed plan, amendment, and regulations before they go into effect, she has no control over the Council's initial authority to develop such proposals in the first place. Thus, in accordance with the Fifth Circuit's decision in *Braidwood*, there is no agency relationship between Coit and

*Lab. Relations Bd. v. Newark Elec. Corp.*, 14 F.4th 152, 161 (2nd Cir. 2021).[8] In applying these principles, the Court must answer a narrow question: whether Coit had the authority to develop her own amendment, or regulation, when the Final Rule implementing Amendment 54 was promulgated. *See* Capacity to Ratify, § 4.04, Restatement (Third) Of Agency (2006) ("the relevant time to determine whether the principal has capacity to ratify is the time of ratification. . . . It is not necessary for ratification that the principal have had capacity as well at the time of the act that the ratification concerns."). For if not, there can be no agency relationship, and therefore, no ratification. *Braidwood*, 104 F.4th at 948 ("no agency relationship exists when the purported 'principal' cannot do what his agent does.").

## A. Coit's authority and the Magnuson-Stevens Act's structure

Coit is the National Marine Fisheries Service Assistant Administrator and serves as the Secretary of Commerce's Designee in interactions with the Council, including approval of the Council's plans and regulations.[9] Such authority to execute and fulfill duties on the Secretary's

---

the Council—although it looks like an agency relationship at first blush. *See Braidwood*, 104 F.4th at 948; Agency Defined, § 1.01, Restatement (Third) Of Agency § 1.01 (2006) (explaining that such "legal consequences resemble those of common-law agency.").

[8] Ratification may be express or implied. AM. JUR. 2D AGENCY § 142 (2025). Here, it is undisputed that there was no express ratification. As a result, the Government submits—without any direct authority in support—that "common law agency principles offer[] no help to this Court" and that the Court should instead focus on Coit's "final say in issuing the Amendment 54 Final Rule." [101], pps. 2, 9. Doing so, however, would be in direct opposition to the Fifth Circuit's remand Order [94]. Indeed, in that Order, the Fifth Circuit stated that this Court would "benefit from [*Braidwood's*] ratification analysis . . . that appl[ied] 'basic principles of agency' law." [94], p. 6. Pursuant to Fifth Circuit authority, and because other courts have recognized "[t]he concept of ratification stems from traditional agency law," this Court declines to follow the Government's approach to this analysis. *Willie v. Raimondo*, Civ. No. 22-0689-BAH, 2024 WL 2832599, *5 (D. Md. Jun. 3, 2024); *Doolin Sec. Sav. Bank, F.S.B. v. Off. of Thrift Supervision*, 139 F.3d 203, 212 (D.C. Cir. 1998) (applying principles of agency law despite no express ratification); *Lushe v. Verengo, Inc.*, No. 13-cv-7632-ABC, 2014 WL 12772259, *5 (C.D. Cal. Mar. 24, 2014) ("It is well-settled in the Ninth Circuit that ratification presumes an existing agency relationship.").

[9] The Bell Plaintiffs briefly argue, for the first time, that Coit was unconstitutionally appointed because she is a principal officer, rather than an inferior officer, serving in violation of the Appointments Clause. [102], p. 10. To begin, this argument is not properly raised on remand. Although the issue of ratification is currently before this Court,

behalf was delegated to her by the Under Secretary of Commerce for Oceans and Atmosphere.[10] The Regional Fishery Management Councils, including the Gulf of Mexico Fishery Management Council, exist outside the National Oceanic and Atmospheric Administration's hierarchy. These Councils were established by Congress in accordance with the Magnuson-Stevens Act to protect "valuable and renewable natural resources" that are this nation's "fish." 16 U.S.C.§ 1801(a)(1). Congress created these Councils "to exercise sound judgment in the stewardship of fishery resources through the preparation, monitoring, and revisions" of "fishery management plans[.]" 16 U.S.C. §§ 1801(b)(4), (5).

Once the Council develops the fishery management plan or amendment, and any regulations that are "necessary or appropriate" to implement or modify a plan or amendment, they are submitted to the Secretary. 16 U.S.C. § 1852(h); 16 U.S.C. § 1853(c). The Secretary must then "immediately commence a review of the plan or amendment to determine whether it is consistent with the national standards . . . and any other applicable law." 16 U.S.C. § 1854(a)(1)(A). Within ninety days of publishing notice of the plan to the public, the Secretary must "approve, disapprove, or partially approve a plan or amendment. . . by written notice to the Council." 16 U.S.C. § 1854(a)(3). A disapproval must specify the law or standards the plan conflicts with and offer recommendations regarding fixing the plan. *Id.* If the Secretary does not notify the Council within that time frame, "then such plan or amendment shall take effect as if approved." *Id.* If a plan is

---

whether Coit was properly appointed could have been raised before now. Regardless, it is unnecessary for this Court to reach this issue, as the Plaintiffs are prevailing on the lack of any ratification.

[10] Dep't of Com., DOO 10-15, Under Secretary of Commerce for Oceans and Atmosphere and Administrator of the National Oceanic and Atmospheric Administration, § 3.05 (2011).

disapproved, the Council can submit a revised plan and begin the cycle anew. 16 U.S.C. § 1854(a)(4).

Similarly, the Secretary must also review any regulations submitted with the plan to "determine whether they are consistent with the fishery management plan, plan amendment, this chapter, and other applicable law." 16 U.S.C. § 1854(b)(1). If the Secretary approves of the regulations, they enter a notice and comment period. 16 U.S.C. § 1854(b)(1)(A). If the regulations are not approved, the Secretary must notify the Council and give recommendations on bringing the regulations in line with the plan or the law. 16 U.S.C. § 1854(b)(1)(B). The Council can then resubmit the regulations for approval. 16 U.S.C. § 1854(b)(2). The Secretary must promulgate any final regulations within thirty days of the notice-and-comment period concluding. 16 U.S.C. § 1854(b)(3). Before making any revisions to the regulations, however, the Secretary must consult the Council. *Id.*

If the Council does not develop a plan within "a reasonable period of time" or does not "submit a revised or further revised plan or amendment" after the Secretary disapproves of a plan, then the Secretary may develop her own plan. 16 U.S.C. § 1854(c)(1). Once the Secretary's plan is complete, however, the Secretary must submit it to the Council for notice and comment and open a general notice-and-comment period for sixty days. 16 U.S.C. § 1854(c)(4). After those notice periods, the Secretary can adopt her plan. 16 U.S.C. § 1854(c)(5). Likewise, if the Secretary develops her own plan, she may also develop her own regulations. 16 U.S.C. § 1854(c)(6). Those regulations too must be submitted to the Council and the public for notice and comment. *Id.*[11]

---

[11] The Third Circuit recently addressed this "pocket-veto" power possessed by the Council in *Lofstad v. Raimondo*, 117 F.4th 493, 499 (3rd Cir. 2024).

Within thirty days after that period, the Secretary must promulgate final regulations. 16 U.S.C. § 1854(c)(7).

## B. Amendment 54

It was in accordance with this process that the Council voted to approve Draft Amendment 54 in October of 2022. GULF OF MEX. FISHERY MGMT. COUNCIL, GULF COUNCIL MOTIONS REPORT OCTOBER 24-27, 2022, p. 4-5. Under the Magnuson-Stevens Act's structure, Coit was required to review the Draft Amendment 54 to determine whether it aligned with "the national standards" and to examine the accompanying proposed regulations to determine whether "they are consistent with the fishery management plan" and "other applicable law." 16 U.S.C. §§ 1854(a), (b).[12]

---

[12] These national standards include:

(1) Conservation and management measures shall prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery for the United States fishing industry.

(2) Conservation and management measures shall be based upon the best scientific information available.

(3) To the extent practicable, an individual stock of fish shall be managed as a unit throughout its range, and interrelated stocks of fish shall be managed as a unit or in close coordination.

(4) Conservation and management measures shall not discriminate between residents of different States. If it becomes necessary to allocate or assign fishing privileges among various United States fishermen, such allocation shall be (A) fair and equitable to all such fishermen; (B) reasonably calculated to promote conservation; and (C) carried out in such manner that no particular individual, corporation, or other entity acquires an excessive share of such privileges.

(5) Conservation and management measures shall, where practicable, consider efficiency in the utilization of fishery resources; except that no such measure shall have economic allocation as its sole purpose.

(6) Conservation and management measures shall take into account and allow for variations among, and contingencies in, fisheries, fishery resources, and catches.

(7) Conservation and management measures shall, where practicable, minimize costs and avoid unnecessary duplication.

(8) Conservation and management measures shall, consistent with the conservation requirements of this chapter (including the prevention of overfishing and rebuilding of overfished stocks), take into account the importance of fishery resources to fishing communities by utilizing economic and social data that meet the requirements of paragraph (2), in order to (A) provide for the sustained participation of such communities, and (B) to the extent practicable, minimize adverse economic impacts on such communities.

Ultimately, Coit approved Amendment 54 for notice-and-comment on February 23, 2023. As a result, Amendment 54 was published on March 2, 2023, and the proposed regulations implementing Amendment 54 were published on March 10, 2023. 88 Fed. Reg. 13,077; 88 Fed. Reg. 14,964. After the notice and comment period ended, Coit issued the Final Rule implementing Amendment 54 by her authority under 16 U.S.C. § 1854(b) and Amendment 54 was promulgated on June 15, 2023. 88 Fed. Reg. 39,193-01.

## C. Coit's authority

Based on the Council's process and Coit's ultimate review and approval, the Government submits that Coit "effectively ratified" Amendment 54 and the regulations and "accepted them as her own decision." [98], p. 11. But the question of ratification—unlike proximate causation—does not turn solely on Coit's final approval. Instead, ratification depends on whether Coit had the capacity to ratify at the "the time of ratification." Capacity to Ratify, § 4.04, Restatement (Third) Of Agency (2006); *Advanced Disposal Services E., Inc. v. N.L.R.B.*, 820 F.3d 592, 602 (3rd Cir. 2016) ("First, the ratifier must, at the time of ratification, still have the authority to take the action to be ratified."). Meaning, to successfully ratify an act, "the party ratifying should be able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made." *Braidwood*, 104 F.4th at 948 (quoting *FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 98, 115 S. Ct. 537, 130 L. Ed. 2d 439 (1994)); Capacity to Ratify, § 4.04, Restatement (Third) Of Agency (2006). Thus, for Coit's final approval of Amendment 54 and the accompanying regulations to

---

(9) Conservation and management measures shall, to the extent practicable, (A) minimize bycatch and (B) to the extent bycatch cannot be avoided, minimize the mortality of such bycatch.

(10) Conservation and management measures shall, to the extent practicable, promote the safety of human life at sea.

16 U.S.C. § 1851.

function as a ratification of the Council's actions, Coit must have had the "actual authority" to develop her *own* amendment, or regulation, at the time she promulgated the Final Rule implementing Amendment 54. Capacity to Ratify, § 4.04, Restatement (Third) Of Agency (2006). She did not. Under the Magnuson-Stevens Act's structure, Coit could develop her own plan, amendment, or regulation in two ways.

First, Section 1854(c) permits Coit to "prepare a fishery management plan," if: (1) the Council fails to develop a plan "after a reasonable period of time" or (2) she "disapproves or partially disapproves any such plan or amendment, or disapproved a revised plan or amendment, and the Council . . . fails to submit a revised or further revised plan or amendment." 16 U.S.C. § 1854(c). It is undisputed that neither of these prerequisites had occurred when the Final Rule was implemented by Coit. Even if they had, however, Coit would have nevertheless been required to submit her amendment to the "Council for consideration and comment" as well as publish it in the Federal Register to allow for "comments of interested persons." *Id.* at 1854(c)(4)(A),(5). Under this Section, the notice and comment period lasts a period of sixty days. *Id.* It is only "[a]fter the close of such 60-day period, the Secretary, after taking into account any such comments and recommendations, as well as any views, information, or comments . . . may adopt such plan or amendment." *Id.* Accordingly, at the time the Final Rule was promulgated, Coit could not have adopted her own amendment or regulation—instead of the Council's proposed ones—under Section 1854(c).

Second, Section 1854(e) also permits Coit to unilaterally develop her own plan, amendment, or regulation when certain conditions are met. But even under this section—which the Government admits was not invoked here—there are limitations to Coit's power. *See* [98], p.

16

13. Section 1854(e) governs "rebuilding overfished fisheries" and instructs the Secretary to notify the Council and "request that action be taken to end overfishing in the fishery and to implement conservation and management measures to rebuild affected stocks of fish." *Id*. at § 1854(e)(2). On April 7, 2021, the National Marine Fisheries Service "informed the Council" that Gulf Greater Amberjack was still being over fished,[13] and "the Council began work on Amendment 54 to update the greater amberjack rebuilding plan." 88 Fed. Reg. 14964-01. Pursuant to Section 1854(e), the Council was afforded two years to "prepare and implement a fishery management plan, plan amendment, or proposed regulations." 16 U.S.C. § 1854(e)(3). As discussed above, the Council voted to approve Draft Amendment 54 in October of 2022 and submitted it to Coit on February 23, 2023, which was within the two-year period proscribed in the statute. Thus, in accordance with Section 1854(e), Coit was prohibited from developing her own plan, amendment, or regulation at the time she approved and implemented the Final Rule. *Id*. at § 1854(e)(5). In fact, under this section, Coit was prohibited from developing her own amendment or regulations *unless* the Council failed to submit the same within the two-year period prescribed by the statute. *Id*. at § 1854(e)(5). And even then, Coit would have been required to comply with Section 1854(c), which as discussed above, requires "consideration and comment" by the Council and "interested persons." *Id*. at § 1854(c)(4)(A), (5). Only after the close of a sixty-day period for consideration and comment by the Council could Coit then adopt her own amendment. *Id*. at § 1854(c)(5).

While Coit may have eventually been able to develop and adopt her own amendment and regulations in accordance with the Magnuson-Steven's Act, at the time the Final Rule was implemented, she had no such authority. And without such authority, Coit could not ratify the

---

[13] The "Greater amberjack has been under a rebuilding plan since 2003." 88 Fed. Reg. 14964-01

Council's actions. *Fed. Election Com'n v. NRA Pol. Victory Fund*, 513 U.S. 88, 98, 115 S. Ct. 537, 130 L. Ed. 2d 439 (1994) ("it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made."). Indeed, "the general rule [is] that the ratification of an act purported to be done for a principal by an agent is treated as effective *at the time the act was done*. In other words, . . . the ratification 'relates back' in time to the date of the act by the agent." *Advanced Disposal Services E., Inc. v. N.L.R.B.*, 820 F.3d 592, 602 (3rd Cir. 2016) (emphasis added) (quoting *In re E. Supply Co.*, 267 F.2d 776, 778 (3rd Cir. 1959)). "This 'timing problem' has since been read to require that the ratifier have the 'power' to reconsider the earlier decision at the time of ratification." *Advanced Disposal Services E., Inc. v. N.L.R.B.*, 820 F.3d 592, 602 (3rd Cir. 2016) (citations omitted).

For example, in *Federal Election Commission v. NRA Political Victory Fund*, the Federal Election Commission timely petitioned the Supreme Court for a writ of certiorari on January 18, 1994, but did not obtain prior authorization from the Solicitor General. *Federal Election Com'n*, 513 U.S. at 90. The Supreme Court "invited the United States to file a brief addressing the question '[w]hether the [FEC] has statutory authority to represent itself in this case in this Court.'" *Id*. The United States submitted that the FEC lacked such authority. *Id*. In an attempt to ratify the petition for writ of certiorari, however, the Solicitor General "authorized the FEC's petition by letter dated May 26, 1994." *Id*. This after the fact authorization "did not come until more than 120 days after the deadline for filing a petition had passed." *Id*. at 98. Thus, the Supreme Court had to determine whether the May 26 authorization "relates back to the date of the FEC's unauthorized filing so as to make it timely." *Id*. The Supreme Court found it did not because as of the May 26, 1994, authorization, the Solicitor General "could not himself have filed a petition for certiorari on that

date because the 90–day time period for filing a petition had expired on January 20, 1994. His authorization simply came too late in the day to be effective." *Id.* In other words, the Solicitor General did not have the authority to file a petition for certiorari at the time of his after the fact authority. And without such authority, his authorization could not be an effective ratification.

Similarly, in *Hardin County v. Trunkline Gas Co.*, the Fifth Circuit considered whether, under Texas law, the state legislature could ratify a highway improvement contract between Hardin County—a political subdivision of the state—and a construction company. The court found that the contract was void because the County had entered into the highway improvement contract after the state legislature had passed a law divesting counties of the legal capacity to enter into such contracts. That new legislation vested contracting authority solely in the Texas Highway Department, and the Texas Constitution explicitly prohibited the legislature from authorizing any county payments made without legal authority. Thus, the Fifth Circuit held that the state legislature could not "ratify" the contract because it lacked constitutional authority to authorize any county payments earmarked for highway improvement. *Hardin Cty. v. Trunkline Gas Co.*, 311 F.2d 882, 884 (5th Cir. 1963), *vacated by* 375 U.S. 8, 84 S. Ct. 49, 11 L. Ed. 2d 38 (1963), *remanded to* 330 F.2d at 792.

As these cases illustrate, a principal cannot ratify an act that the principal lacks the legal authority to do. For these reasons, this Court finds that Coit's review and approval of the Final Rule implementing Amendment 54 did not function as a ratification of the Council's actions.

To be sure, Coit's measured and deliberate approval of Amendment 54 (after expiration of the notice and comment period), which cut off the proximate causation to the Council, does not constitute ratification. In other words, independent approval and ratification are not one in the

19

same. That she approved Amendment 54 pursuant to her authority under Section 1854(b) does not alter the fact that she had no such authority to develop her own plan, amendment, or regulation. In fact, it is because of this same structure that Coit lacked the authority to promulgate her own amendment or regulations but for the happening of certain conditions. To demonstrate a potential example of the difference between independent approval or disapproval—such that it cuts off proximate cause—but does not equate to a ratification, the Court offers the following hypothetical.

Assume a corporation is formed and the articles of incorporation provide for the creation of a special committee tasked with making recommendations to the chief financial officer for things like employee and executive pay and other matters. After receiving a proposal from the special committee, the articles of incorporation provide the chief financial officer two options: (1) reject the proposal and recommend changes to the special committee or (2) approve the special committee's proposal for publication to the board of directors and to the shareholders. After the thirty-day notice and comment period ends, as provided for in the articles of incorporation, the chief financial officer may adopt the proposed employee and executive pay plan.

Under this example, the chief financial officer certainly had the authority to approve or disapprove of the special committee's proposal—but the chief financial officer did not have the authority to create their own employee or executive pay plan. Thus, the chief financial officer's review and approval of the proposed plan could not function as ratification. But it could function as cutting off proximate cause to the special committee, as any harm arising from the chief financial officer's decision would be more than one step removed from the special committee's conduct.

In sum, that the Magnuson-Stevens Act required Coit's review—but not necessarily approval—of Amendment 54 means that proximate causation to the Council was cut off. But it

does not mean that Coit had the authority to ratify the Council's actions at the time of said review and approval. Thus, Coit's review and approval of the Final Rule implementing Amendment 54 pursuant to her authority under Section 1854(b) did not grant her the authority to implement her own plan, amendment, or regulation. In answering the second question on remand: Coit's ultimate adoption of the Final Rule implementing Amendment 54 did not function as a ratification of the Council's actions.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that this Court has jurisdiction to consider the Arnesen Plaintiffs' claims for declaratory and injunctive relief against the Council.

IT IS FURTHER ORDERED AND ADJUDGED that Janet Coit's, National Marine Fisheries Service Assistant Administrator, review and approval of the Final Rule did not function as a ratification of the Council's actions.

IT IS FURTHER ORDERED AND ADJUDGED that this action is transferred to the Fifth Circuit Court of Appeals for further proceedings.

This, the 4th day of May, 2025.

_____
TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE